Natalie A. Landreth (Bar no. 0405020)
Erin C. Dougherty (Bar no. 0811067)
**NATIVE AMERICAN RIGHTS FUND**
745 West 4th Avenue, Suite 502
Anchorage, Alaska 99501
Phone: (907) 276-0680
Facsimile: (907) 276-2466
E-mail: landreth@narf.org
dougherty@narf.org

James Thomas Tucker (*pro hac vice pending*)
Sylvia O. Semper (*pro hac vice pending*)
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
300 South Fourth Street, 11th Floor
Las Vegas, Nevada 89101
(702) 727-1400; FAX (702) 727-1401
E-mail: james.tucker@wilsonelser.com
sylvia.semper@wilsonelser.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MIKE TOYUKUK; FRED AUGUSTINE; NATIVE VILLAGE OF HOOPER BAY; and TRADITIONAL VILLAGE OF TOGIAK,<br><br>Plaintiffs,<br><br>v.<br><br>MEAD TREADWELL, Lieutenant Governor of the State of Alaska; GAIL FENUMIAI, Director of Elections for the State of Alaska; MICHELLE SPEEGLE, Election Supervisor of the Fairbanks Regional Elections Office III; and BECKA BAKER, Election Supervisor of the Nome Regional Elections Office IV,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

## INTRODUCTION

1. This is an action to enforce the statutory guarantee of language assistance for limited-English proficient (LEP) Alaska Native United States (U.S.) citizens under Section 203 of the Voting Rights Act (VRA), 42 U.S.C. § 1973aa-1a (Section 203) and the voting guarantees of the Fourteenth and Fifteenth Amendments of the United States Constitution, to obtain injunctive and declaratory relief pursuant to Section 3 of the VRA, 42 U.S.C. § 1973a, and 28 U.S.C. § 2201. Section 203 is referred to herein as the "Bilingual Election Requirements."

2. Plaintiffs are seeking the same form of language assistance that the Defendants agreed to provide to limited-English proficient Yup'ik-speaking voters and other voters in the 2010 settlement agreement in the Bethel Census Area of Alaska in the case captioned *Anna Nick, et al. v. Bethel, et al.*, Case No. 3:07-cv-00098-TMB. The language assistance procedures that the Defendants agreed to provide in the *Nick* litigation to resolve their violations of Section 203 of the VRA are not provided to all villages in the Dillingham and Wade Hampton Census Areas of Alaska, which are immediately adjacent to the Bethel Census Area.

3. Plaintiffs for their Complaint against Defendants allege as follows:

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343(a)(3)-(4), and 42 U.S.C. § 1973j(f).

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district and Defendants reside in this district.

## PARTIES

6. Plaintiff Mike Toyukuk is a Yup'ik-speaking U.S. citizen of voting-age (over 18 years of age). Plaintiff Toyukuk is a registered voter who resides in Manokotak, which is within the Dillingham Census Area of Alaska. His first and primary language is Yup'ik. He completed the

eighth grade in primary school. He is unable to understand fully the English voting materials and oral instructions in English and accordingly is LEP. Because of his limited-English proficiency, and because Defendants fail to comply with the Bilingual Election Requirements of the VRA, Plaintiff Toyukuk is unable to participate meaningfully in the electoral process.

7. Plaintiff Fred Augustine is a Yup'ik-speaking U.S. citizen of voting-age (over 18 years of age). Plaintiff Augustine is a registered voter who resides in Alakanuk, which is within the Wade Hampton Census Area of Alaska. His first and primary language is Yup'ik. He is illiterate as defined by the U.S. Census Bureau because he did not complete the fifth grade in primary school. He has not completed any grade level of schooling. He is unable to understand fully the English voting materials and oral instructions in English and accordingly is LEP. Because of his limited-English proficiency, and because Defendants fail to comply with the Bilingual Election Requirements of the VRA, Plaintiff Augustine is unable to participate meaningfully in the electoral process.

8. Plaintiff Native Village of Hooper Bay is a tribal council located in Hooper Bay, Alaska, an Alaska Native village that is within the Wade Hampton Census Area. Plaintiff Native Village of Hooper Bay is the elected government for the village of Hooper Bay and as such, has the purpose of promoting the cultural, economic, political, and social welfare of village residents. Members of Plaintiff Native Village of Hooper Bay are enrolled members of the federally recognized tribe of the Native Village of Hooper Bay and are Alaska Native voting-age U.S. citizens who are registered to vote or are eligible to register to vote in federal and state elections. Chevak Cup'ik, also known as the Hooper Bay-Chevak Cup'ik language (Cup'ik), which is a dialect of Yup'ik, is the primary language for members of the Native Village of Hooper Bay, which conducts its internal business in Cup'ik. Some enrolled members of the Native Village of Hooper Bay are LEP Cup'ik speaking voting-age U.S. citizens and illiterate as defined by the U.S. Census Bureau because they have not completed the fifth primary grade, as identified in the most recent

3

Section 203 coverage determinations. Because of their limited-English proficiency and/or illiteracy, and because the Defendants fail to comply with the Bilingual Elections Requirements and other provisions of the VRA, enrolled members of the Native Village of Hooper Bay are unable to participate meaningfully in the electoral process. Plaintiff Native Village of Hooper Bay sues in a representational capacity on behalf of the affected tribal members it represents. Neither the claims asserted nor the relief requested by Plaintiff Native Village of Hooper Bay requires the participation of individual members of the Native Village of Hooper Bay in this litigation.

9. Plaintiff Traditional Village of Togiak is a tribal council located in Togiak, Alaska, an Alaska Native village that is within the Dillingham Census Area. Plaintiff Traditional Village of Togiak is the elected government for Togiak and as such, has the purpose of promoting the cultural, economic, political, and social welfare of village residents. Members of Plaintiff Traditional Village of Togiak are enrolled members of the federally recognized tribe of the Traditional Village of Togiak and are Alaska Native voting-age U.S. citizens who are registered to vote or are eligible to register to vote in federal and state elections. Yup'ik is the primary language for members of the Traditional Village of Togiak, which conducts its internal business in Yup'ik. Some enrolled members of the Traditional Village of Togiak are LEP Yup'ik speaking voting-age U.S. citizens and illiterate as defined by the U.S. Census Bureau because they have not completed the fifth primary grade, as identified in the most recent Section 203 coverage determinations. Because of their limited-English proficiency and/or illiteracy, and because the Defendants fail to comply with the Bilingual Elections Requirements and other provisions of the VRA, enrolled members of the Traditional Village of Togiak are unable to participate meaningfully in the electoral process. Plaintiff Traditional Village of Togiak sues in a representational capacity on behalf of the affected tribal members it represents. Neither the claims asserted nor the relief requested by Plaintiff Traditional Village of Togiak requires the participation of individual

4

members of the Traditional Village of Togiak in this litigation.

10. Defendant Mead Treadwell is the Lieutenant Governor of Alaska and is responsible for the control and supervision of the Division of Elections in the State of Alaska including the appointment of the Director of Elections. ALASKA STAT. § 15.10.105.

11. Defendant Gail Fenumiai is the Director of Elections for the State of Alaska. Defendant Fenumiai is responsible for the supervision of regional election offices, all matters related to the employment and training of election personnel, and the administration of all state elections, as well those municipal elections that the state is required to conduct. ALASKA STAT. § 15.10.105.

12. Defendant Michelle Speegle is the Election Supervisor of the Fairbanks Regional Elections Office III. Defendant Speegle is responsible for assisting the administration of elections in voting precincts in the Wade Hampton Census Area. ALASKA STAT. § 15.10.110.

13. Defendant Becka Baker is the Election Supervisor of the Nome Regional Elections Office IV. Defendant Baker is responsible for assisting the administration of elections in voting precincts in the Dillingham Census Area. ALASKA STAT. § 15.10.110.

14. Defendants Treadwell, Fenumiai, Speegle, and Baker are collectively referred to as the "Defendants." The Defendants are sued in their official capacities only.

## FACTS RELEVANT TO ALL CLAIMS

**A. Coverage of the Dillingham and Wade Hampton Census Areas by the Bilingual Election Requirements.**

15. The Dillingham and Wade Hampton Census Areas have been continuously covered by Section 203 since October 22, 1975. 40 Fed. Reg. 49,422 (Oct. 22, 1975); 28 C.F.R. § 51, App.

16. The Bureau of the Census issued its most recent Notice of Determination for Section 203 coverage on October 13, 2011. Dep't of Commerce, Bureau of the Census, Voting Rights Act Amendments of 2006, Determinations Under Section 203 (2011 Coverage Determinations), 76 Fed. Reg. 63,602 (Oct. 13, 2011) (to be codified at 28 C.F.R. pt. 55).

17. According to the Section 203 data files released by the Bureau of the Census supporting the 2011 Coverage Determinations, the Dillingham Census Area of Alaska has a total population of 4,845 persons, of whom approximately two-thirds (3,280) speak the Yup'ik language. U.S. CENSUS BUREAU, REDISTRICTING DATA, VOTING RIGHTS DETERMINATION FILE (2011 Coverage Data Files), *available at* http://www.census.gov/rdo/data/voting_rights_determination_file.html.

18. According to the 2011 Coverage Data Files, the Dillingham Census Area of Alaska has a citizen voting-age population of 3,225 persons. *Id.*

19. According to the 2011 Coverage Data Files, the Dillingham Census Area of Alaska has 2,050 citizens of voting-age who speak Yup'ik. Among those Yup'ik-speaking voting-age citizens, approximately 18.3 percent are limited-English proficient voters (LEP Yup'ik-Speaking Voters). *Id.*

20. According to the 2011 Coverage Data Files and supporting data files available through the Bureau of the Census, the illiteracy rate among all voting-age citizens nationwide is 1.16 percent (National Illiteracy Rate). *Id.*

21. According to the 2011 Coverage Data Files, the illiteracy rate among LEP Yup'ik-Speaking Voters in the Dillingham Census Area is 32 percent, which is over 27 times higher than the National Illiteracy Rate. *Id.*

22. According to the 2011 Coverage Determinations, the Bureau of the Census listed Alaska Native (Yup'ik) as a covered minority language group in the Dillingham Census Area of Alaska. 76 Fed. Reg. 63,602.

23. According to the 2011 Coverage Data Files, the Wade Hampton Census Area of Alaska has a total population of 7,460 persons, of whom approximately 73.4 percent (5,475 persons) speak the Yup'ik language and approximately 11.3 percent (840 persons) speak the Inupiat language. 2011 Coverage Data Files.

24. According to the 2011 Coverage Data Files, the Wade Hampton Census Area of Alaska has a citizen voting-age population of 4,335 persons. *Id.*

25. According to the 2011 Coverage Data Files, the Wade Hampton Census Area of Alaska has 3,195 citizens of voting-age who speak Yup'ik. Among those Yup'ik-speaking voting-age citizens, approximately 16.1 percent are LEP Yup'ik-Speaking Voters. *Id.*

26. According to the 2011 Coverage Data Files, the illiteracy rate among LEP Yup'ik-Speaking Voters in the Wade Hampton Census Area is approximately 21.4 percent, which is over 18 times higher than the National Illiteracy Rate. *Id.*

27. According to the 2011 Coverage Determinations, the Bureau of the Census listed Alaska Native (Yup'ik) as a covered minority language group in the Wade Hampton Census Area of Alaska. 76 Fed. Reg. 63,603.

28. The Dillingham and Wade Hampton Census Areas have not bailed out from coverage under Section 203 pursuant to Section 203(d) of the VRA and continue to be required to provide language assistance in the covered languages and dialects.

### B. Alaska's Unequal Educational Opportunities in the Dillingham and Wade Hampton Census Areas Have Contributed to High LEP and Illiteracy Rates.

29. Alaska Native voting-age U.S. citizens who are registered to vote or are eligible to register to vote in federal and state elections have been denied equal educational opportunities by the State of Alaska, "resulting in severe disabilities and continuing illiteracy in the English language." 42 U.S.C. § 1973b(f)(1).

30. Alaska had a longstanding history of segregated schooling and offering only non-Native children "public secondary schools in their own communities." S. REP. NO. 94-295, at 29-30, reprinted in 1975 U.S.C.C.A.N. at 795-96 (citing *Hootch v. State Operated Sch. Sys.*, case no. 72-2450-CIV (Alaska Super. Ct. 1973)); *see also* Settlement Agreement ¶¶ 9-30, *Tobeluk v. Lind*, case no. 72-2450 (Alaska Super. Ct. Sept. 3, 1976).

31. Native villages in the Dillingham and Wade Hampton Census Areas, including Alakanuk, Hooper Bay, Manokotak, and Togiak, were among the 126 Native communities that were part of the class in *Hootch v. State Operated School System* and *Tobeluk v. Lind*.

32. The State of Alaska did not construct secondary schools in any of the 126 Native communities that were part of the class in *Hootch v. State Operated School System* and *Tobeluk v. Lind* until after the State entered into a consent decree in *Tobeluk v. Lind*. Those secondary schools were not completed until the mid- to late-1980s.

33. In 1999, the State of Alaska was found liable for providing unequal educational opportunities to Native students statewide, including Native students in the Dillingham and Wade Hampton Census Areas, because of "discrepancies in funding made available to Native and non-Native students." Order Granting Pls.' Mots. for Partial Summ. J. on Facilities Funding, *Kasayulie v. State*, case no. 3AN-97-3782-CIV (Alaska Super. Ct. Sept. 1, 1999).

34. In 2005, 45 percent of Native students graduated from high school, compared to 72 percent of non-Native white students in Alaska. Only 19.5 percent of all Native seniors statewide were proficient in reading comprehension.

35. In 2007, the State of Alaska was found to have violated its "constitutional responsibility to maintain a public school system," including to Native students in the Dillingham and Wade Hampton Census Areas, by failing to oversee the quality of secondary education in Native villages and to provide a "meaningful opportunity to learn the material" necessary to graduate. *Moore v. State*, case no. 3AN-04-9756-CIV (Alaska Super. Ct. June 21, 2007).

36. In 2010, the State of Alaska failed to establish that its remedial efforts in *Moore* would "result in compliance with this constitutional responsibility." Order on Review of 2009 Submissions, *Moore v. State*, case no. 3AN-04-9756-CIV (Alaska Super. Ct. Mar. 1, 2010).

37. In 2012, the State of Alaska settled the *Moore* litigation, which included remedies that are to be implemented for Native communities in the Dillingham and Wade Hampton Census Areas. Settlement Agreement, *Moore v. State*. Case no. 3AN-04-9756-CIV (Alaska Super. Ct. Jan. 2012).

### C. Defendants Have Failed to Comply with the Bilingual Election Requirements for the Covered Yup'ik Language and Cup'ik Dialect.

38. Because the Dillingham and Wade Hampton Census Areas of Alaska are subject to the requirements of Section 203, "any voter registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots" that Defendants provide in English also must be furnished in the covered Yup'ik language to voters who speak each respective language, so that those voters can be effectively informed of and participate fully in all voting-connected activities. 42 U.S.C. § 1973aa-1a.

39. Because the Dillingham and Wade Hampton Census Areas of Alaska are subject to the requirements of Section 203, Defendants' obligations include the requirement "to ascertain the dialects that are commonly used by members of the applicable language minority group in the jurisdiction and to provide oral assistance in such dialects." 28 C.F.R. § 55.13; *see* 28 C.F.R. §§ 55.11, 55.20. Defendants therefore are required to provide language assistance in all dialects of the covered Yup'ik language, including the Cup'ik dialect.

40. In conducting elections in the Dillingham and Wade Hampton Census Areas of Alaska, Defendants have failed to furnish in the covered Yup'ik language, including the Cup'ik dialect, the information, assistance, and voting materials needed by LEP Yup'ik-Speaking Voters and those speaking the Cup'ik dialect to participate effectively in the electoral process, including, but not limited to, the following:

    a) Defendants have failed to provide complete, accurate, and uniform oral language translations of all written voting materials into the covered Yup'ik language and the Cup'ik dialect, including, but not limited to: publicity and advertisements for voter registration; voter purges; notices to place voters on the inactive voter list as a prelude to purging them as provided by the National Voter Registration Act and Alaska state law; election dates; polling place locations and assignments; voting machine instructions; the official ballot for federal, state, and local elections, including the names of candidates, offices, the number of votes to cast for each office, and ballot propositions or questions; the annual register form used to gather information for voter lists; signage at the polls; absentee voting opportunities, information, and materials; permanent absentee voting information and materials; the right to receive assistance from the person of their choice; voter information posted on the Internet; early voting materials; and voter information guides and sample ballots required by

state law.

b)     Defendants have failed to provide effective oral language assistance for voting materials and other election information in the covered Yup'ik language and the Cup'ik dialect, including oral language assistance for the written voting materials described in the preceding paragraph.

c)     Defendants have failed to recruit, appoint, train, and maintain an adequate pool of bilingual poll officials on a consistent basis to provide covered LEP Yup'ik-Speaking Voters, including those speaking the Cup'ik dialect, with effective language assistance.

d)     Defendants have failed to engage in community outreach activities in each village to provide covered LEP Yup'ik-Speaking Voters and those speaking the Cup'ik dialect with effective language assistance.

e)     Defendants have failed to provide radio announcements that reach each village to provide covered LEP Yup'ik-Speaking Voters and those speaking the Cup'ik dialect with effective language assistance.

f)     Defendants have failed to train adequately the existing pool of election officials and poll officials concerning language assistance requirements in the covered Yup'ik language, including the Cup'ik dialect.

g)     Defendants have failed to inform LEP Yup'ik-Speaking Voters and those speaking the Cup'ik dialect in their native language about the availability of language assistance, including telephonic assistance for pre- and post-election inquiries and assistance in the polling place on the day of the election.

h)     Defendants have failed to inform LEP Yup'ik-Speaking Voters and those speaking the Cup'ik dialect in their native languages of their right to select their

assistor of choice, other than the voter's employer or agent or agent of that employer or officer or agent of the voter's union, and to receive assistance from their chosen assistor at all stages of the voting process, including inside the voting booth.

**D.     Defendants' Violations Have Resulted in Severely Depressed Native Turnout.**

41.     Defendants' violations of the voting guarantees of the Fourteenth and Fifteenth Amendments to the United States Constitution and under the VRA have resulted in turnout rates among Native U.S. citizens of voting-age that lag far behind the statewide turnout rates of non-Hispanic white U.S. citizens of voting-age.

42.     According to the U.S. Census Bureau, approximately 63.9 percent of all non-Hispanic white U.S. citizens of voting-age in Alaska voted in the November 2012 Presidential Election. U.S. CENSUS BUREAU, VOTING AND REGISTRATION, VOTING AND REGISTRATION IN THE ELECTION OF NOVEMBER 2012—DETAILED TABLES, TABLE 4B, REPORTED VOTING AND REGISTRATION BY SEX, RACE AND HISPANIC ORIGIN, FOR STATES: NOVEMBER 2012, *available at* http://www.census.gov/hhes/www/socdemo/voting/publications/p20/2012/tables.html.

43.     According to the Alaska Division of Elections, approximately 59.6 percent of all registered voters voted in the November 2012 Presidential Election. STATE OF ALASKA, DIVISION OF ELECTIONS, NOVEMBER 6, 2012 OFFICIAL GENERAL ELECTION RESULTS, OFFICIAL RESULTS, STATEWIDE SUMMARY, *available at* http://www.elections.alaska.gov/results/12GENR/data/results.pdf.

44.     According to the Alaska Division of Elections, 141 out of 296 registered voters in Alakanuk voted in the November 2012 Presidential Election, or approximately 47.6 percent of the registered voters there. That turnout rate is 12 percent below the statewide turnout rate for that election. STATE OF ALASKA, DIVISION OF ELECTIONS, NOVEMBER 6, 2012 OFFICIAL GENERAL

Election Results, House District 38 (House District 38 Results), *available at* http://www.elections.alaska.gov/results/12GENR/data/sovc/hd38.pdf.

45. According to the 2011 Coverage Data Files, there are 365 U.S. citizens of voting-age who reside in the village of Alakanuk. Applying that data, 38.6 percent of all U.S. citizens of voting-age residing in Alakanuk (141 out of 365) voted in the November 2012 Presidential Election, which is 25.3 percent lower than the statewide turnout rate among non-Hispanic white U.S. citizens of voting-age in that election. House District 38 Results.

46. According to the Alaska Division of Elections, 227 out of 542 registered voters in Hooper Bay voted in the November 2012 Presidential Election, or approximately 43.5 percent of the registered voters there. That turnout rate is 16.1 percent below the statewide turnout rate for that election. House District 38 Results.

47. According to the 2011 Coverage Data Files, there are 625 U.S. citizens of voting-age who reside in the village of Hooper Bay. Applying that data, 36.3 percent of all U.S. citizens of voting-age residing in Hooper Bay (227 out of 625) voted in the November 2012 Presidential Election, which is 27.6 percent lower than the statewide turnout rate among non-Hispanic white U.S. citizens of voting-age in that election. House District 38 Results.

48. According to the Alaska Division of Elections, 124 out of 261 registered voters in Manokotak voted in the November 2012 Presidential Election, or approximately 47.5 percent of the registered voters there. That turnout rate is 12.1 percent below the statewide turnout rate for that election. State of Alaska, Division of Elections, November 6, 2012 Official General Election Results, House District 36 (House District 36 Results), *available at* http://www.elections.alaska.gov/results/12GENR/data/sovc/hd36.pdf.

49. According to the 2011 Coverage Data Files, there are 280 U.S. citizens of voting-age who reside in the village of Manokotak. Applying that data, 44.3 percent of all U.S. citizens of

13

voting-age residing in Manokotak (124 out of 280) voted in the November 2012 Presidential Election, which is 19.6 percent lower than the statewide turnout rate among non-Hispanic white U.S. citizens of voting-age in that election. House District 36 Results.

50. According to the Alaska Division of Elections, 192 out of 530 registered voters in Togiak voted in the November 2012 Presidential Election, or approximately 36.2 percent of the registered voters there. That turnout rate is 23.4 percent below the statewide turnout rate for that election. STATE OF ALASKA, DIVISION OF ELECTIONS, NOVEMBER 6, 2012 OFFICIAL GENERAL ELECTION RESULTS, HOUSE DISTRICT 37 (House District 37 Results), *available at* http://www.elections.alaska.gov/results/12GENR/data/sovc/hd37.pdf.

51. According to the 2011 Coverage Data Files, there are 455 U.S. citizens of voting-age who reside in the village of Togiak. Applying that data, 42.2 percent of all U.S. citizens of voting-age residing in Togiak (192 out of 455) voted in the November 2012 Presidential Election, which is 21.7 percent lower than the statewide turnout rate among non-Hispanic white U.S. citizens of voting-age in that election. House District 37 Results.

## FIRST CAUSE OF ACTION

### (Violation of Section 203 of the VRA)

52. Plaintiffs restate and incorporate herein the allegations in Paragraphs 1 through 51 of this Complaint.

53. Defendants' failure to provide LEP Yup'ik-Speaking Voters and those speaking the Cup'ik dialect with language election assistance and information, as described above, constitutes a violation of Section 203 of the VRA.

54. Unless enjoined and monitored by this Court, Defendants will continue to violate Section 203 of the VRA by failing to provide the LEP Yup'ik-Speaking Voters and those speaking the Cup'ik dialect in the Dillingham and Wade Hampton Census Areas of Alaska with the language

14

election information and assistance necessary for their effective participation in the electoral process.

## SECOND CAUSE OF ACTION

**(Violation of the Fourteenth and Fifteenth Amendments to the U.S. Constitution)**

55. Plaintiffs restate and incorporate herein the allegations in Paragraphs 1 through 54 of this Complaint.

56. Defendants' violations, as stated above, constitute a qualification, prerequisite, standard, or procedure which has had the purpose and has had the effect of denying or abridging the right to vote on account of race or color, or in contravention of the voting guarantees set forth in 42 U.S.C. § 1973b(f)(2).

57. Defendants' violations, as stated above, have not been few in number and have not been promptly and effectively corrected by State action.

58. The continuing effect of Defendants' violations, as stated above, has not been eliminated.

59. There is a reasonable probability of the recurrence of Defendants' violations in the future.

60. Defendants' violations, as stated above, violate the voting guarantees of the Fourteenth and Fifteenth Amendments to the United States Constitution.

61. Unless enjoined and monitored by this Court, Defendants will continue to violate the voting guarantees of the Fourteenth and Fifteenth Amendments to the United States Constitution in the Dillingham and Wade Hampton Census Areas of Alaska.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment against Defendants which:

(1) Declares that Defendants have failed to provide in an effective manner Yup'ik and

Cup'ik language election information and assistance necessary for the political participation of LEP Yup'ik-Speaking Voters and those speaking the Cup'ik dialect, in violation of Section 203 of the VRA, 42 U.S.C. § 1973aa-1a;

(2) Authorizes the appointment of Federal examiners by the United States Civil Service Commission in accordance with section 6 of the VRA to serve for such period of time as the Court shall determine is appropriate to enforce the guarantees of the Fifteenth Amendment to the United States Constitution, as provided by Section 3(a) of the VRA, 42 U.S.C. § 1973a(a);

(3) Retains jurisdiction for such period as the Court may deem appropriate and during such period no voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different from that in force or effect at the time the proceeding was commenced shall be enforced unless and until the Court finds that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, or in contravention of the voting guarantees set forth in Section 1973b(f)(2) or the Defendants obtain preclearance of that voting change from the Attorney General of the United States, as provided by Section 3(c) of the VRA, 42 U.S.C. § 1973a(c);

(4) Enjoins the Defendants, their employees, agents, and successors in office, and all persons acting in concert with them, from failing to provide in an effective manner Yup'ik and the Cup'ik dialect language election information and assistance to LEP voters as required by Section 203 of the VRA, 42 U.S.C. § 1973aa-1a;

(5) Requires Defendants to develop and implement a remedial plan to ensure that LEP Yup'ik-Speaking Voters and those speaking the Cup'ik dialect are able to understand, learn of, and participate in all phases of the electoral process as required by Section 203 of the VRA, 42 U.S.C. §

1973aa-1a; and

(6) Plaintiffs further pray that this Court order such additional relief as the interests of justice may require, together with the attorneys' fees, costs (including expert witness fees), and other disbursements incurred in maintaining this action in accordance with the provisions of the Voting Rights Act.

DATED this 19th day of July, 2013.

Respectfully submitted,

s/nlandreth

s/edougherty

Natalie A. Landreth (Bar no. 0405020)
Erin C. Dougherty (Bar no. 0811067)
**NATIVE AMERICAN RIGHTS FUND**
745 West 4th Avenue, Suite 502
Anchorage, Alaska 99501

James Thomas Tucker (*pro hac vice pending*)
Sylvia O. Semper (*pro hac vice pending*)
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
300 South Fourth Street, 11th Floor
Las Vegas, Nevada 89101

Attorneys for Plaintiffs

17