# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

MIKE TOYUKAK, et al.,

                         Plaintiffs,

       v.

BYRON MALLOTT,[1] et al.,

                         Defendants.

Case No. 3:13-cv-00137-SLG

## STIPULATED JUDGMENT AND ORDER

### I.  PREAMBLE AND REMEDIES

WHEREAS, Plaintiffs filed this action to enforce the statutory guarantee of language assistance for limited-English proficient (LEP) Alaska Native, United States (U.S.) voting-age (18 years of age and older) citizens under Section 203 of the Voting Rights Act (VRA), 52 U.S.C. § 10503 (redesignated from 42 U.S.C. § 1973aa-1a) (Section 203), and the voting guarantees of the Fourteenth and Fifteenth Amendments of the United States Constitution, and to obtain injunctive and declaratory relief pursuant to Section 3 of the VRA, 52 U.S.C. § 10302 (redesignated from 42 U.S.C. § 1973a), and 28 U.S.C. § 2201; and

WHEREAS, Plaintiffs contend that Defendants have failed to provide effective language assistance to LEP Alaska Native voting-age citizens in the Dillingham Census

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Lieutenant Governor Byron Mallott was automatically substituted as a party defendant as the successor in office to Mead Treadwell.

Area (DCA), Wade Hampton Census Area (WHCA), and Yukon-Koyukuk Census Area (YKCA) of Alaska; and

WHEREAS, the Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343(a)(3)-(4), and 52 U.S.C. § 10308(f) (redesignated from 42 U.S.C. § 1973j(f)) and venue is appropriate under 28 U.S.C. § 1391(b); and

WHEREAS, Plaintiffs are two individual LEP Yup'ik-speaking Alaska Native U.S. citizens of voting-age who are registered to vote or are eligible to register to vote and reside in the DCA and WHCA and four tribal councils in the DCA, WHCA, and YKCA that are the elected governments for their respective villages, which include LEP Yup'ik-speaking or Gwich'in-speaking Alaska Native voting-age U.S. citizens who are registered to vote or are eligible to register to vote in federal and state elections; and

WHEREAS, Defendants, in their official capacities, are the Lieutenant Governor of the State of Alaska, the Director of the Division of Elections for the State of Alaska, and the Region III and Region IV Supervisors who are responsible under Alaska law for conducting elections in the DCA, WHCA, and YKCA and are collectively referred to as "the Division of Elections" or "the Division"; and

WHEREAS, the Division administers all federal, statewide, and Regional Educational Attendance Area (REAA) elections in the DCA, WHCA, and YKCA; and

WHEREAS, this Stipulated Judgment and Order ("Stipulated Judgment" and/or "Order") is entered into by and between Plaintiffs and Defendants, hereinafter referred to jointly as the "Parties;"

WHEREAS, this Order takes effect upon issuance by this Court (the "Effective Date"); and

3:13-cv-00137-SLG, *Toyukak, et al.  v. Mallott, et al.*
Stipulated Judgment and Order
Page 2 of 33

WHEREAS, the DCA, WHCA, and YKCA have been continuously covered under either Section 4(f)(4) of the VRA and/or Section 203 of the VRA since October 22, 1975, 40 Fed. Reg. 49,422 (Oct. 22, 1975); 28 C.F.R. § 51, App.; and

WHEREAS, it is undisputed that Section 203 applies to the villages in these three census areas for the Yup'ik (in the DCA and WHCA) and Gwich'in (in the YKCA) languages; and

WHEREAS, in the most recent Section 203 coverage determinations, coverage for Yup'ik was triggered in the DCA (*see* Dep't of Commerce, Bureau of the Census, Voting Rights Act Amendments of 2006, Determinations Under Section 203 (2011 Coverage Determinations), 76 Fed. Reg. 63,602 (Oct. 13, 2011) (to be codified at 28 C.F.R. pt. 55)), and on November 1, 2011, the United States Department of Justice notified Defendants that Section 203 coverage of the DCA was triggered by the villages of Aleknagik, Clarks Point, Dillingham, Ekwok, Manokotak, Koliganek, New Stuyahok, Togiak, and Twin Hills; and

WHEREAS, the most recent Section 203 coverage determinations triggered coverage for Yup'ik in the WHCA (*see* 2011 Coverage Determinations), and on November 1, 2011, the United States Department of Justice notified Defendants that Section 203 coverage of the WHCA was triggered by the villages of Alakanuk, Algaaciq, Andreafsky (St. Mary's), Chevak, Emmonak, Hooper Bay, Kotlik, Marshall, Mountain Village, Nunam Iqua, Pilot Station, Pitkas Point, Russian Mission, and Scammon Bay; and

WHEREAS, the most recent Section 203 coverage determinations triggered coverage for Alaskan Athabascan (including Gwich'in) in the YKCA (*see* 2011 Coverage Determinations), and on November 1, 2011, the United States Department of Justice

notified Defendants that Section 203 coverage of the YKCA was triggered by the villages of Allakaket, Beaver, Fort Yukon, Galena, Grayling, Holy Cross, Hughes, Huslia, Kaltag, Koyukuk, Minto, Nenana, Nulato, Ruby, Shageluk, and Tanana all for Alaskan Athabascan, and Defendants acknowledge and agree that Section 203 coverage applies to Arctic Village and Venetie; and

WHEREAS, according to the census data underlying the 2011 Coverage Determinations, the DCA has 2,050 U.S. citizens of voting-age who speak Yup'ik, approximately 18.3 percent of whom are LEP, and the illiteracy rate among those LEP voters is about 32 percent; and

WHEREAS, according to the census data underlying the 2011 Coverage Determinations, the WHCA has 3,195 U.S. citizens of voting-age who speak Yup'ik, approximately 16.1 percent of whom are LEP, and the illiteracy rate among those LEP voters is about 21.4 percent; and

WHEREAS, according to the census data underlying the 2011 Coverage Determinations, the YKCA has 2,665 U.S. citizens of voting-age who speak Alaskan Athabascan, approximately 6.4 percent of whom are LEP, and the illiteracy rate among those LEP voters is about 14.7 percent; and

WHEREAS, the 2011 Coverage Determinations were "effective upon publication in the Federal Register" and are not "subject to review in any court" (52 U.S.C. § 10503(b)(4) (redesignated from 42 U.S.C. § 1973aa-1a(b)(4))); and

WHEREAS, the DCA, WHCA, and YKCA have not bailed out from coverage under Section 203 pursuant to Section 203(d) of the VRA, 52 U.S.C. § 10503(d) (redesignated from 42 U.S.C. § 1973aa-1a(d)); and

WHEREAS, following the Court's decision on the law of the case [Dkt. 124], this case proceeded through a two-week trial that concluded on July 3, 2014, and resulted in a partial Decision on Record issued by the Court on September 3, 2014 [Dkt. 223], and an Interim Order issued by the Court on September 22, 2014, to implement relief for the November 4, 2014 General Election [Dkt. 226]; and

WHEREAS, the Parties want to collect reliable information about the conduct of elections in Alaska and the language assistance provided and to provide this information to the Court; and

WHEREAS, Defendants do not admit and specifically deny liability on all claims and do not concede the Court's holdings were correct, but to avoid protracted and costly litigation, the Parties have conferred in good faith and agreed that this lawsuit should be resolved through the terms of this enforceable Order. Accordingly, the Parties hereby freely and voluntarily consent to the entry of this Order, after having an opportunity to confer with legal counsel, as indicated by the signatures of the Parties and/or their respective counsel; and

WHEREAS, Defendants enter into this Order in good faith and will take all reasonable actions to accomplish the goals specified herein; and

WHEREAS, in exchange for the terms of this Order, Plaintiffs agree to dismiss their claim under the Fourteenth and Fifteenth Amendments to the United States Constitution and their request for relief under Section 3(c) of the Voting Rights Act, and waive further hearings and entry of findings of fact on the constitutional claim and on their request for Section 3(c) relief, without prejudice to Plaintiffs' right to rely on the underlying facts and findings of this case; and

3:13-cv-00137-SLG, *Toyukak, et al.  v. Mallott, et al.*
Stipulated Judgment and Order
Page 5 of 33

WHEREAS, the Parties stipulate that each provision of this Order is appropriate and necessary;

**It is hereby ORDERED, ADJUDGED, AND AGREED that:**

1.      The Court finds this Order is "fair, reasonable and equitable and does not violate the law or public policy," *Sierra Club v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990), including the requirements of the Voting Rights Act, and the Court is "satisfied that the [Order] represents a 'reasonable factual and legal determination,'" *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (internal cite omitted), consistent with the Court's previous decisions in this case including the Decision on the law of the case, the partial Decision on Record, and the Order re: Interim Remedies (Interim Order) after a trial on the merits of Plaintiffs' claims. [Dkts. 124, 223, 226]

2.      The Court adopts the background and terms as set forth herein and enters the relief as set forth herein.

3.      Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Defendants, the Division, its agents, employees, contractors, successors, and all other persons acting in concert with or on behalf of the Division, are permanently enjoined from violating the requirements of Section 203 in the DCA, WHCA, and YKCA and are ordered to implement the remedial terms identified in this Order.

4.      The terms of this Order are final and binding and shall apply to all federal, state, and local elections administered by Defendants, the Division, and its agents, employees, contractors, successors, and all other persons acting in concert with or on behalf of the Division. Whenever Defendants or the Division enter into an election services contract with any other person, entity, political subdivision, or political party to

conduct an election on behalf of that entity, Defendants shall require such person or entity to agree to abide by the terms of this Order as if such person or entity were a party to this Order, and consistent with the responsibility of each person or entity to comply fully with Section 203 of the Voting Rights Act.

5.     The terms of this Order shall supersede any and all conflicting and inconsistent policies, practices, or procedures pertaining to the subject matter of this Order that are used by Defendants, the Division, and its agents, employees, contractors, successors, and all other persons acting in concert with or on behalf of the Division.

6.     No term of this Order shall be construed for or against either party because it has been negotiated by the Parties and represents the Parties' mutual agreement.

7.     This Order shall remain in effect from the Effective Date through December 31, 2020, unless the Court modifies that term. The requirements of this Order shall apply in the DCA, WHCA, and YKCA (as to Gwich'in only in the YKCA) from the Effective Date through December 31, 2020, without regard to any changes in Section 203 coverage as a result of any determinations that may be made by the Director of the Census and/or the Attorney General of the United States or the U.S. Department of Justice during the Order's term.

8.     Notwithstanding the Effective Date, the remedies ordered herein do not apply to the 2015 REAA election,[2] except that: (a) the 2015 REAA election will be

---

[2]     The 2015 REAA election will occur on October 6, 2015, approximately one month after the Effective Date. The Parties agree that the Division will not have sufficient time to implement the other remedies in this Order by the 2015 REAA election.

conducted in substantial compliance with the Court's Interim Order of September 22, 2014 [Dkt. 226)]; (b) Defendants shall submit a post-election report pursuant to Paragraph III(R)(2)(b) that covers all of the information required in the Interim Order, identifying by paragraph all information being reported; and (c) Paragraph I(10), providing for appointment and authorization of Election Observers, goes into effect as of the Effective Date.

9.      At any time after entry of this Order, either party may petition this Court for an Order to enforce the terms of this Order, request clarifications or instructions, and/or apply for any other appropriate relief.

10.     Pursuant to Section 3(a) of the VRA, 52 U.S.C. § 10302(a) (redesignated from 42 U.S.C. § 1973a(a)), during the term of this Order, Election Observers are appointed and are authorized to attend and observe elections and election activities that federal law authorizes, including training, in the DCA, WHCA, and YKCA.

11.     Entry of this judicially approved settlement agreement is considered a final judgment on the merits.

12.     Defendants shall implement the improvements in language assistance identified in this Order.

13.     This Stipulated Judgment represents the entire agreement between the Parties. Any other oral or written representations or agreements of any kind concerning the subject matter of this Stipulated Judgment are of no force or effect.

_____

14.     This Stipulated Judgment may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one and the same agreement.

15.     The Court shall retain jurisdiction of this action through December 31, 2020 to enter further relief or such other orders as may be necessary to effectuate the terms of this Order and to ensure compliance with Section 203 of the Voting Rights Act and the guarantees of the Fourteenth and Fifteenth Amendments to the United States Constitution.

16.     If any party, before December 31, 2020, shall commence proceedings either to seek compliance with this Order or to seek other relief pursuant to this Order, including but not limited to relief necessary to implement the Order, to modify one or more of its terms, or to extend the term (duration) for which the Order is in effect, the Court shall retain jurisdiction over this case until all issues relating to such proceedings have been fully resolved.

## II.     THE COURT'S PRIOR DECISIONS IN THIS CASE

On July 19, 2013, Plaintiffs filed their Complaint. On June 4, 2014, before trial of this matter, the Court issued a Decision on Record to establish the law of the case to be applied in its consideration of Plaintiffs' claims. [Dkt. 124] On September 3, 2014, after a two-week trial of this matter, the Court issued a partial Decision on Record in favor of Plaintiffs on their claim under Section 203 of the Voting Rights Act. The Court took under advisement Plaintiffs' constitutional claim under the Fourteenth and Fifteenth Amendments. [Dkt. 223] At the Court's direction [Dkt. 223 at 22], Defendants [Dkt. 224] and Plaintiffs [Dkt. 225] each provided input on the scope of interim relief to be implemented for the November 4, 2014 General Election. On September 22, 2014, after

considering the Parties' respective submissions, the Court entered an Order granting interim relief for that election. [Dkt. 226].

## III.     REMEDIES AGREED TO BY THE PARTIES

### A.     Adjustments to the Interim Order of September 22, 2014 [Dkt. 226]

1.     Paragraph 4 of the Interim Order [Dkt. 226] is modified to include in the Official Election Pamphlet (OEP) the following information:

(a)     Language assistance is available for all information in the OEP;

(b)     Voters are entitled to help, in their village dialect, with all information in the OEP;

(c)     A summary of pre-election language assistance available, including VHF radio announcements, community meetings, voter registration and absentee ballot assistance opportunities;

(d)     An explanation to voters that help is available both on and before Election Day; and

(e)     A toll-free number for voters to determine the identity of bilingual workers in the voter's village and when events are scheduled. The identity of all bilingual workers, listed by village, shall be on a document that can be referenced by Division staff for any calls that they receive, and this information will be made available to any voter upon request.

2.     Paragraphs 5 and 19 of the Interim Order [Dkt. 226] are modified as follows:

(a)     Certificates of Outreach will be modified to add in confirmation

3:13-cv-00137-SLG, *Toyukak, et al.  v. Mallott, et al.*
Stipulated Judgment and Order
Page 10 of 33

that the outreach worker has made himself or herself available to translate the OEP, knows how to translate and agrees to translate the OEP, and has conducted at least one informational meeting with voters in their village or met with voters on a one-on-one basis;

(b)      The Division will provide outreach workers with a list of dates by which each of their assigned tasks should be completed;

(c)      Each outreach worker will complete and return the Certificate of Outreach; and

(d)      If the outreach worker fails to complete the Certificate of Outreach, the Division may confirm by telephone the tasks that the outreach worker has completed and the dates of completion, preparing their confirmation under penalty of perjury.

3.      Paragraph 6 of the Interim Order [Dkt. 226] providing for a cover letter to the tribal councils accompanying election materials and asking that tribal members be informed is modified to also require that the Division:

(a)      Disseminate all written voting materials identified in the Order; and

(b)      Explain how the voting materials are to be used and disseminated by the tribal council.

4.      Paragraphs 7-10 of the Interim Order [Dkt. 226] shall be completed at least thirty days before each election. The dates on the posters will be modified to cover the specific election.

5.      Paragraphs 11-13 of the Interim Order [Dkt. 226] are modified to reflect that those materials will be included with the Election Day supplies sent to poll workers approximately three weeks before each election.

6.      Paragraph 14 of the Interim Order [Dkt. 226] is modified as follows:

(a)      Shall include the Gwich'in audio and materials as well as Yup'ik audio and materials that have been prepared by the Division; and

(b)      Shall be posted on the website at least three weeks before the election.

7.      Paragraph 15 of the Interim Order [Dkt. 226] is modified as follows:

(a)      The identified election materials shall be disseminated before each primary, general, or special election for which the Division disseminates an OEP;

(b)      The entire OEP must be translated into written Gwich'in and Yup'ik (with the dialectical differences identified in Paragraph III(B)(1) noted) and distributed at least twenty-two days before any election for which the Division disseminates an OEP, except that candidate statements (federal and state offices and judicial candidates) and Judicial Council recommendations will be translated only if they are received by the Division at least thirty days before the applicable statutory deadline. The Division shall include an instruction to candidates and to the Judicial Council that: (a) encourages candidate statements and Judicial Council recommendations be provided to the Division according to this schedule for candidates running for offices that are on the ballot in the DCA, WHCA, and YKCA; and (b) states that the statements or recommendations must be filed with

the Division at least thirty days before the applicable statutory deadline if they wish to have their statement or recommendation translated.

8.    Paragraph 17 of the Interim Order [Dkt. 226] shall be modified to require at least one trained bilingual outreach worker and one bilingual poll worker required for each village and to also provide:

(a)    Defendants shall verify the language abilities of each bilingual outreach worker or poll worker to confirm they are fluent and literate in English and the covered language/dialect, both oral and written, but it shall be sufficient verification for Defendants, without limitation, to obtain written confirmation from the tribal council that the outreach worker or poll worker has these qualifications;

(b)    Defendants will endeavor to use workers recommended by the tribal council. If no worker is identified by the tribal council, then Defendants will identify and recruit a worker who is bilingual and literate in English and the covered language/dialect, both oral and written;

(c)    To the extent it has not already determined the language abilities of a bilingual worker, the Division will confirm the worker's language abilities by: (1) having a qualified person who speaks the language/dialect converse with the worker in the language/dialect; and (2) ask the worker to read out loud voting materials translated into the language/dialect;

(d)    Each worker shall agree in writing their willingness to serve as a bilingual worker and indicate that they feel comfortable providing the translations and language assistance. If the worker fails to agree in writing, the Division may

confirm by telephone the worker has agreed to serve as a bilingual worker, preparing their confirmation under penalty of perjury;

(e) The tribal councils may recommend to the Division that a bilingual poll worker be replaced;

(f) The Division and the tribal council shall collaborate in determining whether the person recommended by the tribal council will be used as a bilingual worker;

and

(g) Subparagraph (a) above does not absolve the Division of any obligations it has under Section 203 of the VRA.

**B.  Dialects**

1.  <u>Yup'ik in the DCA and WHCA</u>. The Yup'ik Translation Panel (YTP) shall accommodate the following dialects of Yup'ik in its translation of all voting materials and election information in the DCA and WHCA: Bristol Bay Yup'ik (BB); Central Yup'ik (GCY); Hooper Bay/Chevak Yup'ik (HBC); Norton Sound Yup'ik (NS); and Yukon Yup'ik (Y). In addition, if a tribal council in the WHCA requires materials in the Nunivak dialect, it must inform Defendants by March 1 of the same year and the Defendants shall provide such materials. The dialect to use for each village in the DCA and WHCA shall be determined by the YTP, and the tribal council(s) in the WHCA may also request the dialect(s) they believe are most understandable for their village(s). Tribal council requests are limited to the dialects specified in this paragraph and, if submitted to Defendants by June 1 of the same year, shall be honored.

2. <u>Gwich'in in the YKCA</u>. The Gwich'in Translation Panel (GTP) shall use Gwich'in in its translations of all voting materials and election information.

**C.    Glossaries of Election Terms**

1.    The Yup'ik glossary shall be updated to include common election terms that appear on forms and instructions or on ballots that do not presently appear in the glossary. On or about January 15, 2016, Plaintiffs shall provide the Division with a list of any other terms they believe should be included in the glossary. The YTP shall review updates to the glossary and identify any additional words to be added to the glossary. The Division shall complete the initial update on or about June 1, 2016, with additional updates to follow as the YTP determines appropriate.

2.    A glossary shall be prepared by the GTP in Gwich'in using the same set of common election terms in the updated Yup'ik glossary. This requirement shall be completed on or about July 1, 2016.

**D.    Toll-Free Number for Language Assistance**

1.    Defendants' voting materials shall reflect that language assistance is available in the covered languages and dialects as identified in Paragraph III(B).

2.    Defendants will have available at least one bilingual translator for each language and dialect spoken in the DCA, WHCA, and YKCA as identified in Paragraph III(B) to provide language assistance by phone.

3.    Defendants shall promptly arrange a call between the voter and an appropriate translator, depending upon the language and dialect of the voter who is calling.

4. The Division shall document the translator's name, their language and dialect, date and duration of the call with the voter calling the toll-free number.

**E. Translation Panels**

1. The YTP shall have at least eight members that shall represent a knowledge, collectively, of all Yup'ik dialects identified in Paragraph III(B)(1). On or about January 15, 2016, Plaintiffs shall suggest to the Division the names of people qualified to serve on the YTP, to include the Yup'ik dialects they speak. On or about February 15, 2016, the Division shall appoint the members of the YTP.

2. A GTP shall be created with at least three bilingual speakers who are proficient in performing oral and written translations into Gwich'in. On or about January 15, 2016, Plaintiffs shall suggest to the Division the names of people qualified to serve on the GTP. On or about February 15, 2016, the Division shall appoint the members of the GTP.

3. The Division will pay each member of the two Translation Panels $50-$75 an hour.

**F. Procedures for Translations**

1. All translations identified in the Interim Order [Dkt. 226 ¶¶ 3, 7-12, 15] shall:

(a) For Yup'ik, include adjustments for any differences in the dialects identified in Paragraph III(B)(1). If minor, they can be done through footnotes. If more numerous or substantial adjustments are necessary for a particular dialect, they can be done through a separate document for that dialect which identifies the dialect. The YTP shall determine whether the dialectical

differences are sufficient to warrant using a separate document instead of footnotes; and

(b)     Be in writing, to facilitate complete, accurate, and uniform oral translations.

2.     Translations of the official ballot, sample ballot, and glossary shall be completed by a quorum (majority) of the members of each of the two translation panels described in Paragraph III(E) of this Order. For example, if the YTP has eight members, at least five members may be used to complete the translations as long as those members can identify and adjust for the dialectical differences identified in Paragraph III(B)(1). If the GTP has three members, at least two members may be used to complete the translations.

3.     Translations of the pro/con statements, neutral summaries, and summary of statement of costs may be completed by one translator and shall be verified by at least one additional translator, as long as the Yup'ik translators can identify and adjust for the dialectical differences identified in Paragraph III(B)(1).

4.      Translations of other voting materials and election information shall be completed by translation panel members to the maximum extent feasible, provided that all Yup'ik translations are adjusted for the dialectical differences identified in Paragraph III(B)(1). Whenever feasible, each translation shall be verified by at least one other translator.

5.     The Division shall make all reasonable efforts to recruit bilingual recorders to provide audio of the translations identified in paragraphs 14-15 of the Interim Order [Dkt. 226] and an audio translation of the glossaries. On or about January 15, 2016,

Plaintiffs shall suggest to the Division names of people qualified to serve as bilingual recorders, to include for Yup'ik-speakers the Yup'ik dialects they speak. The Division will pay a bilingual recorder $50-$75 an hour, will have the bilingual recorder sign an agreement of their willingness to work, and will give the bilingual recorder a deadline for each recording. If a bilingual recorder misses the first deadline by more than five days, the Division will endeavor to replace the bilingual recorder and will have the replacement bilingual recorder sign an agreement of their willingness to work.

### G. Bilingual Outreach Workers and Poll Workers, and Language Assistance Compliance Manager

1. The Division shall recruit and retain a full-time employee responsible for administrating and coordinating all activities necessary for the Division to comply with Section 203 of the VRA ("Language Assistance Compliance Manager").

2. The Division shall provide Yup'ik language assistance in all villages in the DCA and WHCA. The Division shall provide Gwich'in language assistance in the following villages in the YKCA: Arctic Village, Beaver, Birch Creek, Chalkyitsik, Circle, Fort Yukon, and Venetie.

3. In each village, the Division shall provide at least ten hours of outreach for each election in which there is no pamphlet, and between twenty to thirty hours of outreach for each election for which there is a pamphlet. Thirty is the maximum number of hours authorized to be paid to an outreach worker unless the outreach worker first obtains the Division's approval.

4. In the Division's initial communication with the tribal councils about

upcoming election information, the Division shall include a statement that the tribal council may recommend a bilingual outreach worker or poll worker, and may request at any time that a bilingual outreach worker or poll worker be replaced.

5.    The Division will consult with the tribal councils in the DCA, WHCA, and YKCA and ask that the tribal councils provide the Division with a list of names and contact information of persons who have been identified by the tribal councils as being bilingual and literate in English and the covered language/dialect.

6.    The Division shall secure the written agreement of replacement bilingual workers. If the replacement bilingual worker fails to agree in writing, the Division may confirm by telephone the worker has agreed to serve as a bilingual worker, preparing their confirmation under penalty of perjury.

7.    If the Division learns that a person scheduled to work as a bilingual outreach worker has not performed or cannot perform their assigned tasks, where feasible the Division shall recruit and train a replacement bilingual outreach worker.

**H.    Mandatory Training**

1.    The Division will make all poll workers aware of language assistance requirements in its regular training sessions.

2.    Mandatory in-person training. All bilingual election workers are required to receive the training identified in this Order. If a bilingual outreach worker or bilingual poll worker fails to attend in-person training, wherever feasible the Division must reschedule training for that worker or replace that worker who will be scheduled to attend the next in-person training.

3. <u>Frequency</u>. In-person training shall be done every even-numbered year and for elections in odd-numbered years in which a special ballot measure appears, at the time identified in this Order. During odd-numbered years in which there is no special ballot measure, telephonic training shall be conducted.

4. <u>Duration of Bilingual Outreach Worker and Bilingual Poll Worker Training</u>. Training for bilingual election workers must be for a reasonable amount of time sufficient to cover the topics in paragraph 5 below. The Division shall make travel arrangements for those election workers who must travel to the training location that are sufficient to ensure that all bilingual election workers attend all of the mandatory in-person training. The Division shall pay for all associated costs of travel, lodging, and per diem.

5. <u>Content of language training</u>. Language assistance training shall be in addition to any training provided for election procedures and Alaska elections law; the training will focus exclusively on language assistance and practicing available translations. The Division may schedule this language training to be on a day consecutive to its more general training provided to all poll workers. The language training shall adequately cover the following topics:

(a) Summary of language assistance required under the VRA;

(b) Procedures for identifying and assisting voters who may need language assistance;

(c) Advising all voters of the availability of translation assistance;

(d) Instructions for providing assistance on voter registration;

(e) Instructions for providing assistance in completion of absentee ballot applications or their equivalent (e.g., vote by fax, etc.);

(f)　　Special instructions for workers covering Permanent Absentee Voting (PAV) locations;

(g)　　Instructions on early voting procedures and schedule;

(h)　　Instructions for casting a ballot on a voting machine, including how to use the audio translation feature;

(i)　　Instructions on assisting voters who need to cast a challenged ballot;

(j)　　Translations on the content of the OEP available at the time of training, which shall be provided to workers in writing in the applicable language and dialect as identified in Paragraph III(B);

(k)　　How to use written translations to provide complete, accurate, and uniform translations in the covered language and dialect;

(l)　　Instructions on how to translate procedural voting materials (forms and instructions);

(m)　　Instructions on conducting informational meetings before the election to discuss the ballot and registration and voting procedures;

(n)　　Practice performing available translations;

(o)　　Translation of the entire ballot into the language/dialect;

(p)　　Practicing the translation of the ballot with each translator; and

(q)　　A checklist summarizing all of the workers' assigned duties under the Order and the expected dates of completion for pre-election and post-election activities.

6.　　<u>Training materials</u>. Training materials provided to bilingual outreach

workers and poll workers shall facilitate training on all of the topics listed above. Bilingual workers shall be provided with copies of all written translations available at the time of the training to use for practice during the training, a training handbook, a checklist of their assigned duties and expected completion dates, Election Day materials, and any other materials covering the training topics. Written translations not available at the time of this training shall be provided by mail to the bilingual worker when they become available.

7.    <u>Additional in-person training for bilingual poll workers for the General Election</u>. After all remaining materials for the General Election become available, but before the General Election, the Division will conduct three in-person training sessions, one each for the DCA, WHCA, and YKCA, for the bilingual poll workers in those areas. The training shall cover any voting materials, ballot, ballot measures, pro/con statements, neutral summaries, bond questions, statements of costs, candidate statements, etc. not available during the earlier training session. Emphasis will be placed on practicing translations of ballot measures, ballots, and other information not provided in the initial training.

8.    <u>Distance training only to be provided in emergencies</u>. Distance or phone training shall only be provided in exceptional cases, including if travel is not possible for any of the mandatory in-person training sessions due to inclement weather or if a bilingual outreach worker or bilingual poll worker is unable to perform their duties and there is insufficient time to provide in-person training to a replacement worker. Distance training must be done at least one (1) day before the election and can be by conference call. The training must be at least two (2) hours in duration and cover the topics from the regular training.

9. <u>Documentation of training</u>. Defendants shall maintain records of the following through the term of this Stipulation and Order:

(a)     The training agenda, to include all of the topics listed above;

(b)     Training materials disseminated to bilingual workers;

(c)     Audiovisual and other materials used during the presentation;

(d)     Written role-playing scenarios covered during the training;

(e)     Attendance list with the bilingual worker's printed name and village and their signature and sign-in and sign-out times. If one or more bilingual workers did not attend the complete training, then the Division must identify that act and explain why their partial attendance was unavoidable; and

(f)     Documentation of travel provided for training, to include Division employees and workers who attended.

10.     <u>Notice of Training.</u> Defendants shall endeavor to provide notice of all trainings to bilingual election workers, to include the call-in information for distance training, at least fifteen days prior to training. If fifteen days' notice is not possible, notice shall be given as soon as practicable.

**I.     Mandatory Pre-election Outreach**

1.     <u>Mandatory informational meetings</u>. Pre-election outreach must include informational meetings. Performance of this requirement by outreach workers may be through one or more community-wide informational meeting(s), small group meeting(s), or one-on-one meetings. The informational meetings shall be to register voters and to cover the following election topics before the election:

(a) Announce all upcoming election deadlines (including registration, absentee ballots, etc.);

(b) Announce all upcoming election dates and a summary of what will appear on the ballot to include:

(i) Federal, state, or local offices;

(ii) Ballot questions: and

(iii) Bond questions;

(c) Provide an opportunity to register to vote and provide language assistance for filling out registration forms;

(d) Explain the absentee ballot application and voting process when the applications or ballots are being disseminated or accepted by the State;

(e) Explain the early voting process including dates and locations;

(f) Explain voter identification requirements to include the acceptable forms of identification;

(g) Review in the covered language and dialect all of the information in the OEP;

(h) Review in the covered language and dialect the sample ballot;

(i) Describe the availability of language assistance before Election Day and on Election Day, including the name of the person(s) and dates and locations where it will be provided;

(j) For other informational meetings, if any, identify the dates, times, and locations for other meetings to discuss the election information and the

name of the person(s) to contact if the voters have any questions about the meetings;

(k)     Provide the name and toll-free number of the person available for assistance in their language/dialect; and

(l)     Have a question and answer session in the language and dialect regarding the election or voting process.

2.     _Mandatory follow-up_. At least twenty-five days before an election, the Division shall follow up with the outreach workers to confirm that they have received the outreach materials and that they agree that they will perform the outreach in a timely manner.

**J.     Pre-election and Election Day Publicity**

1.     The Division shall provide publicity that includes all of the announcements described in the Interim Order [Dkt. 226].

2.     In addition to the publicity specified in the Interim Order [Dkt. 226], the following terms will be implemented:

(a)     _Radio broadcasts_. The Division shall request that the following radio stations broadcast PSAs, using the language and dialect identified in parentheses:

(i)     KDLG – Dillingham (Bristol Bay Yup'ik);

(ii)     KYUK – Bethel (Central Yup'ik);

(iii)     KICY – Nome (Yukon Yup'ik);

(iv)     KCUK – Chevak (Hooper Bay/Chevak); and

(v)     KZPA – Fort Yukon (Gwich'in).

(b)    Frequency. The Division shall request that beginning at least five days before each election and each deadline (e.g., absentee voting, voter registration, list maintenance), the radio station make at least three announcements a day on weekdays for three days in the language and dialect identified above in Paragraph III(J)(2)(a).

(c)    Content (in the language and dialect identified above in Paragraph III(J)(2)(a)). The following topics shall be included in the PSAs:

(i)    Date and time of the next election;

(ii)    Opportunities to register to vote and the deadline for registering before the next election;

(iii)    Availability of absentee voting and the deadline for submitting an application;

(iv)    Early voting dates and the Division's telephone number to find the voter's early voting location;

(v)    General description of the subject matter of the ballot including if there are federal/state/local offices, bond questions, ballot propositions, etc.;

(vi)    Availability of language assistance before Election Day and on Election Day; and

(vii)    Toll-free number for language assistance or to find out the name of the bilingual outreach worker in the voter's village.

(d)    List maintenance announcements. The following topics shall be included:

(i)     A summary of what list maintenance is and why it is important;

(ii)    Steps to take to ensure the voter remains on the active voter list; and

(iii)   Toll-free number for language assistance for any questions.

(e)     Documentation. The Division shall keep documentation of its correspondence with the radio stations, including if it is provided information by the radio station that identifies the dates, times, and content of the ads aired.

**K.     Language Assistance for List Maintenance to be provided to Tribal Councils.**

Within two weeks of when the Division sends list maintenance inactivation notices to voters it shall provide to tribal councils a written translation in the applicable language and dialect identified in Paragraph III(B) of the list maintenance radio ad.

**L.     Touch-screen Voting Machines**

1.     Touch-screen voting machines shall be available at all polling places on Election Day when there are federal races on the ballot. If more than one language and dialect for a village is identified pursuant to the procedure in Paragraph III(B), then the audio translation on the touch-screen voting machine shall be provided in one language and dialect identified by the YTP in consultation with the appropriate tribal council. Audio translations shall be included in the applicable language and dialect identified pursuant to Paragraph III(B) for all audio information and instructions provided

on the machine in English. All poll workers shall be trained on how to use the audio language assistance available on the machines.

2. If placing audio translations on the touch-screen voting machines is not technologically feasible, the Division will provide the voter with access to the audio translation in another format and will make available to the voter the translated sample ballot.

**M. Sample Ballots and their Use**

1. The Division shall continue to post on its webpage and to provide written bilingual sample ballots to tribal councils, outreach workers, and poll workers. The tribal councils or outreach workers may provide copies of the written bilingual sample ballots to voters before the election. Voters are free to bring in their marked-up sample ballot to assist them in casting a ballot on Election Day.

2. Written bilingual sample ballots shall be available to voters at the Division's four Regional Offices and at the Division's Mat-Su office.

**N. Voter Registration**

1. Voter registration forms. The Division shall ensure that each tribal council has an adequate supply of voter registration forms and instructions.

2. Sign. A sign shall be posted in the applicable language and dialect identified in Paragraph III(B) in the village identifying the availability of voter registration forms, language assistance to register, and the name and phone number of the bilingual registrar, if any. If there is no bilingual registrar, the sign shall provide the Division's toll-free number for language assistance.

### O. Permanent Absentee Voting (PAV)

1.      PAV sites in the three census areas must have resident bilingual workers available during the entire time that absentee voting is occurring with a notice posted in public places in the applicable language and dialect identified in part III(B) advertising the name, phone number, location of the bilingual worker and that language assistance is available. The bilingual worker must be trained in-person and be fully bilingual and literate in English and the language/dialect spoken in the village.

2.      No village in the three census areas that is not currently a PAV site shall be designated as a PAV site without providing the Plaintiffs with at least sixty days' notice of Defendants' intention to designate the village as a PAV site.

### P. Voters Provided Questioned Ballots

The Division shall provide all voters who vote a questioned ballot instructions on the questioned ballot process in the applicable language and dialect identified in Paragraph III(B). Information and notices about the questioned ballot process may be provided by the bilingual poll worker orally, to include information on how the voter determines whether their vote was counted via a toll-free number. Language assistance as described in Paragraph III(D) shall be provided to voters calling the toll-free number.

### Q. Record-Keeping

Defendants must maintain all records pertaining to their language assistance program, consistent with 28 C.F.R. § 55.21. Complete records must be maintained for the term of this Stipulation and Order to identify the Division's efforts under it.

### R. Reporting requirements

1.      Thirty days before each election, the Division shall inform Plaintiffs if

they do not believe they will be in compliance with any requirement under this Order.

2.      Defendants will submit reports and records to the Court, consistent with the terms of the Order and as previously ordered by the Court [Dkt. 226, ¶¶ 17, 21]. The reports shall cover all of the information required in this Order, identifying by paragraph all information being reported. These reports shall be provided on the following schedule:

(a)      45 days after each Primary Election;

(b)      in odd-numbered years, 60 days after the REAA Election; and

(c)      in even-numbered years, 60 days after the General Election for the REAA Election and the General Election.

3.      Plaintiffs will have an opportunity to file a response within 60 days after Defendants file their report.

## IV.   ENFORCEMENT

A.      The Court may enforce the terms of this Order through contempt proceedings. *See United States v. Sandoval County*, 797 F. Supp. 2d 1249, 1254 (D.N.M. 2011).

B.      If Defendants or the Division do not have the intent or means to comply with the terms of this Order, Plaintiffs shall have the right to seek such relief as may be necessary to enforce the terms of this Order. Before seeking such relief from the Court, Plaintiffs shall notify Defendants, in writing, of Plaintiffs' understanding or belief that Defendants lack the intent or means to comply with this Order. Such notice shall specify any grounds for such understanding or belief.

## V.    AMENDMENTS TO THE ORDER

**A.    Modification.** The Court may, either on request of a party or acting *sua sponte*, modify one or more of the provisions of this Order if the Court finds that such modification is necessary to achieve the purposes of the Order or in the interests of justice.

1.    <u>*Sua Sponte.*</u> Before modifying a term *sua sponte*, the Court will give the Parties notice and an opportunity to be heard on the issue. The Court will make specific findings on the record to support any decision to modify a term.

2.    <u>Upon request of a Party.</u> Pursuant to the "flexible approach" to be applied to motions to modify a final judgment pursuant to Fed. R. Civ. P. 60(b)(5), the Court will consider two factors in determining whether a requested modification is warranted. First, the party seeking modification must establish "a significant change either in factual conditions or in law" that would "make compliance with the decree substantially more onerous" or "unworkable because of unforeseen obstacles" or that "enforcement of the decree without modification would be detrimental to the public interest." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992). Second, the Court will "consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383. The party seeking such a modification must establish a "significant" change in circumstance, and not merely that "it is no longer convenient" to use the existing term for which modification is sought. *Id.* Any proposed modification is limited to resolution of "the problems created by the change in circumstances. A court should do no more, for a[n order such as this Order] is a final judgment that may be reopened only to the extent that equity requires." *Id.* at 391.

**B.** **Extension of the term of the Order.** This Order shall terminate on December 31, 2020. Either by agreement between the Parties or pursuant to a determination by the Court, the term of the Order shall be extended if "time and experience have demonstrated" that the Order "has failed to accomplish the result" that it was "specifically designed to achieve." *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 249 (1968); *see also Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267 (3d Cir. 2001) (collecting citations). Plaintiffs bear the burden of proving that extension is warranted.

## VI. ATTORNEYS' FEES AND COSTS UNDER THE ORDER

A. The Court's review and approval of this Order does not alter Plaintiffs' status as prevailing parties pursuant to the Court's partial Decision on Record [Dkt. 223].

B. Defendants shall pay Plaintiffs their attorneys' fees and costs in the amount of $1,898,695.80 subject to legislative appropriation. The Court has reviewed Plaintiffs' extensive submissions that detail the fees and expenses incurred [Dkts. 275-280], as well as the Defendants' Response to the Notice at Docket 281. The Court finds that the agreed upon amount for the payment of attorney's fees and expert fees, and other litigation expenses are all reasonable. *See* 52 U.S.C. § 10302(a).

C. Plaintiffs may recover their reasonable attorneys' fees and costs for postjudgment enforcement of this Order, which includes extending the term of the Order, monitoring the Order, and other work aimed at compliance. This provision supplements, but does not replace or modify, the attorneys' fees and costs to be paid to Plaintiffs identified above in Paragraph VI(B) of this Order. Any motion for attorneys' fees shall comply with D.Ak. L.R. 54.3. Any application for costs shall comply with D.Ak. L.R. 54.1.

## CONCLUSION

The Court finds that the parties' proposed stipulated Judgment and Order is fair, reasonable and equitable and does not violate public policy. See *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1165 (9th Cir. 2012) (quoting *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990)). Therefore, this Stipulated Judgment and Order is entered on this date and constitutes the Final Judgment in this case.

DATED this 30th day of September, 2015 at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE