# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

MIKE TOYUKAK, et al.,

                    Plaintiffs,

       v.

NANCY DAHLSTROM[1], et al.,

                    Defendants.

Case No. 3:13-cv-00137-SLG

## THIRD STIPULATED ORDER

## I.   PREAMBLE AND REMEDIES

WHEREAS, Plaintiffs filed this action to enforce the statutory guarantee of language assistance for limited-English proficient (LEP) Alaska Native, United States (U.S.) voting-age (18 years of age and older) citizens under Section 203 of the Voting Rights Act (VRA), 52 U.S.C. § 10503 (redesignated from 42 U.S.C. § 1973aa-1a) (Section 203), and the voting guarantees of the Fourteenth and Fifteenth Amendments of the United States Constitution, and to obtain injunctive and declaratory relief pursuant to Section 3 of the VRA, 52 U.S.C. § 10302 (redesignated from 42 U.S.C. § 1973a), and 28 U.S.C. § 2201; and

WHEREAS, Plaintiffs contended that Defendants failed to provide effective language assistance to LEP Alaska Native voting-age citizens in the Dillingham Census

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Lieutenant Governor Nancy Dahlstrom was automatically substituted as a party defendant as the successor in office to Kevin Meyer.

Area (DCA), Kusilvak Census Area (KCA, formerly Wade Hampton Census Area), and Yukon-Koyukuk Census Area (YKCA) of Alaska; and

WHEREAS, the Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343(a)(3)-(4), 52 U.S.C. § 10308(f) (redesignated from 42 U.S.C. § 1973j(f)), the September 30, 2015 Stipulated Judgment and Order, and the September 20, 2021 Second Stipulated Order, and venue is appropriate under 28 U.S.C. § 1391(b); and

WHEREAS, Plaintiffs are two individual LEP Yup'ik-speaking Alaska Native U.S. citizens of voting-age who are registered to vote or are eligible to register to vote and reside in the DCA and KCA and four tribal councils in the DCA, KCA, and YKCA that are the elected governments for their respective villages, which include LEP Yup'ik- speaking or Gwich'in-speaking Alaska Native voting-age U.S. citizens who are registered to vote or are eligible to register to vote in federal and state elections; and

WHEREAS, Defendants, in their official capacities, are the Lieutenant Governor of the State of Alaska, the Director of the Division of Elections for the State of Alaska, and the Region III and Region IV Supervisors who are responsible under Alaska law for conducting elections in the DCA, KCA, and YKCA and are collectively referred to as "the Division of Elections" or "the Division"; and

WHEREAS, the Division administers all federal, statewide, and Regional Educational Attendance Area (REAA) elections in the DCA, KCA, and YKCA; and

WHEREAS, this Third Stipulated Order ("Order") is entered into by and between Plaintiffs and Defendants, hereinafter referred to jointly as the "Parties;"

2

WHEREAS, this Order takes effect upon issuance by this Court (the "Effective Date"); and

WHEREAS, the DCA, KCA, and YKCA have been continuously covered under either Section 4(f)(4) of the VRA and/or Section 203 of the VRA since October 22, 1975, 40 Fed. Reg. 49,422 (Oct. 22, 1975); 28 C.F.R. § 51, App.; and

WHEREAS, it is undisputed that Section 203 applies to the villages in the DCA and KCA for the Yup'ik language; and

WHEREAS, in the most recent Section 203 coverage determinations, coverage for Yup'ik was triggered in the DCA (*see* Dep't of Commerce, Bureau of the Census, Voting Rights Act Amendments of 2006, Determinations Under Section 203 (2021 Coverage Determinations), 86 Fed. Reg. 69,611, 69,612 (Dec. 8, 2021)); and

WHEREAS, the most recent Section 203 coverage determinations included coverage for Yup'ik in the KCA (*see* 2021 Coverage Determinations); and

WHEREAS, the most recent Section 203 coverage determinations did not include coverage for Alaskan Athabascan (including Gwich'in) in the YKCA (*see* 2021 Coverage Determinations); and

WHEREAS, according to the census data underlying the 2021 Coverage Determinations, the DCA has 2,411 U.S. citizens of voting-age who speak Yup'ik, approximately 235 of whom are LEP and 54 are also illiterate; and

WHEREAS, according to the census data underlying the 2021 Coverage Determinations, the KCA has 3,829 U.S. citizens of voting-age who speak Yup'ik,

approximately 304 of whom are LEP and 43 are also illiterate; and

WHEREAS, according to the census data underlying the 2021 Coverage Determinations, the YKCA has 2,535 U.S. citizens of voting-age who speak Alaskan Athabascan, approximately 77 of whom are LEP and 9 are also illiterate; and

WHEREAS, the 2021 Coverage Determinations were "effective upon publication in the Federal Register" and are not "subject to review in any court" (52 U.S.C. § 10503(b)(4) (redesignated from 42 U.S.C. § 1973aa-1a(b)(4))); and

WHEREAS, the DCA, KCA, and YKCA have not bailed out from coverage under Section 203 pursuant to Section 203(d) of the VRA, 52 U.S.C. § 10503(d) (redesignated from 42 U.S.C. § 1973aa-1a(d)); and

WHEREAS, following the Court's decision on the law of the case [Dkt. 124], this case proceeded through a two-week trial that concluded on July 3, 2014, and resulted in a partial Decision on Record issued by the Court on September 3, 2014 [Dkt. 223], an Interim Order issued by the Court on September 22, 2014 [Dkt. 226], to implement relief for the November 4, 2014 General Election, and a Stipulated Judgment and Order issued by the Court on September 30, 2015 [Dkt. 282]; and

WHEREAS, the Parties negotiated a Second Stipulated Order, which the Court issued on September 20, 2021 [Dkt. 333]; and

WHEREAS, the Plaintiffs wished to extend the Second Stipulated Order and the Defendants agreed to extend it past its December 31, 2022 expiration date; and

WHEREAS, the Parties want to collect reliable information about the conduct of

4

elections in Alaska and the language assistance provided and to provide this information to the Court; and

WHEREAS, Defendants do not admit and specifically deny liability on all claims and do not concede the Court's holdings were correct, but to avoid protracted and costly litigation, the Parties have conferred in good faith and agreed that the Plaintiffs' request should be resolved through the terms of this enforceable Order. Accordingly, the Parties hereby freely and voluntarily consent to the entry of this Order, after having an opportunity to confer with legal counsel, as indicated by the signatures of the Parties and/or their respective counsel; and

WHEREAS, Defendants enter into this Order in good faith and will take all reasonable actions to accomplish the goals specified herein; and

WHEREAS, in exchange for the entry of this Order, Plaintiffs agree that their request has been resolved; and

WHEREAS, the Parties stipulate that each provision of this Order is appropriate and necessary;

It is hereby ORDERED, ADJUDGED, AND AGREED that:

1.    The Court finds this Order is "fair, reasonable and equitable and does not violate the law or public policy," *Sierra Club v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990), including the requirements of the Voting Rights Act, and the Court is "satisfied that the [Order] represents a 'reasonable factual and legal determination,'" *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (internal cite omitted), consistent with

the Court's previous decisions in this case including the Decision on the law of the case, the partial Decision on Record, the Order re: Interim Remedies (Interim Order), the Stipulated Judgment and Order, and the Second Stipulated Order, after a trial on the merits of Plaintiffs' claims. [Dkts. 124, 223, 226, 282, 333]

2.     The Court adopts the background and terms as set forth herein and enters the relief as set forth herein.

3.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Defendants, the Division, its agents, employees, contractors, successors, and all other persons acting in concert with or on behalf of the Division, are permanently enjoined from violating the requirements of Section 203 in the DCA and KCA and are ordered to implement the remedial terms identified in this Order.

4.     The terms of this Order are final and binding and shall apply to all federal, state, and local elections administered by Defendants, the Division, and its agents, employees, contractors, successors, and all other persons acting in concert with or on behalf of the Division. Whenever Defendants or the Division enter into an election services contract with any other person, entity, political subdivision, or political party to conduct an election on behalf of that entity, Defendants shall require such person or entity to agree to abide by the terms of this Order as if such person or entity were a party to this Order, and consistent with the responsibility of each person or entity to comply fully with Section 203 of the Voting Rights Act.

5.     The terms of this Order shall supersede any and all conflicting and inconsistent

policies, practices, or procedures pertaining to the subject matter of this Order that are used by Defendants, the Division, and its agents, employees, contractors, successors, and all other persons acting in concert with or on behalf of the Division.

6.      No term of this Order shall be construed for or against either party because it has been negotiated by the Parties and represents the Parties' mutual agreement.

7.      This Order shall remain in effect from the Effective Date through December 31, 2026. The requirements of this Order shall apply in the DCA and KCA from the Effective Date through December 31, 2026, unless the Court modifies this coverage after changes in Section 203 coverage made by the Director of the Census and/or the Attorney General of the United States or the U.S. Department of Justice during the Order's term.

8.      At any time after entry of this Order but before its expiration, either party may petition this Court for an Order to enforce the terms of this Order, request clarifications or instructions, and/or apply for any other appropriate relief.

9.      Pursuant to Section 3(a) of the VRA, 52 U.S.C. § 10302(a) (redesignated from 42 U.S.C. § 1973a(a)), until December 31, 2024, Election Observers are appointed and are authorized to attend and observe elections and election activities that federal law authorizes, including training, in the DCA and KCA. Observer reports shall be filed under seal with copies provided to the parties.

10.     Defendants shall implement the improvements in language assistance identified in this Order.

11.     This Third Stipulated Order represents the entire agreement between the

Parties. Any other oral or written representations or agreements of any kind concerning the subject matter of this Third Stipulated Order are of no force or effect. This Third Stipulated Order supersedes the Second Stipulated Order entered September 20, 2021.

12.     This Third Stipulated Order may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one and the same agreement.

13.     The Court shall retain jurisdiction of this action through December 31, 2026, to enter further relief or such other orders as may be necessary to effectuate the terms of this Order and to ensure compliance with Section 203 of the Voting Rights Act and the guarantees of the Fourteenth and Fifteenth Amendments to the United States Constitution.

14.     If any party, before December 31, 2026, shall commence proceedings either to seek compliance with this Order or to seek other relief pursuant to this Order, including but not limited to relief necessary to implement the Order, or to modify one or more of its terms, the Court shall retain jurisdiction over this case until all issues relating to such proceedings have been fully resolved.

## II.     THE COURT'S PRIOR DECISIONS IN THIS CASE

On July 19, 2013, Plaintiffs filed their Complaint. On June 4, 2014, before trial of this matter, the Court issued a Decision on Record to establish the law of the case to be applied in its consideration of Plaintiffs' claims. [Dkt. 124] On September 3, 2014, after a two-week trial of this matter, the Court issued a partial Decision on Record in favor of Plaintiffs on their claim under Section 203 of the Voting Rights Act. The Court took under advisement Plaintiffs' constitutional claim under the Fourteenth and Fifteenth Amendments. [Dkt. 223]

8

At the Court's direction [Dkt. 223 at 22], Defendants [Dkt. 224] and Plaintiffs [Dkt. 225] each provided input on the scope of interim relief to be implemented for the November 4, 2014 General Election. On September 22, 2014, after considering the Parties' respective submissions, the Court entered an Order granting interim relief for that election. [Dkt. 226] On September 30, 2015 the Court issued the Stipulated Order and Judgment and on September 20, 2021, the Court issued the Second Stipulated Order.

## III.    REMEDIES AGREED TO BY THE PARTIES

### A.    Remedies Originating in the Interim Order of September 22, 2014

1.    The Official Election Pamphlet (OEP) will clearly explain that LEP voters may ask their outreach workers for pre-election help in translating the pamphlet, and it will also include the following information:

(a)    Language assistance is available for all information in the OEP;

(b)    Voters are entitled to help, in their village dialect, with all information in the OEP;

(c)    A summary of pre-election language assistance available, including VHF radio announcements, community meetings, voter registration and absentee ballot assistance opportunities;

(d)    An explanation to voters that help is available both on and before Election Day; and

(e)    A toll-free number for voters to determine the identity of

9

bilingual workers in the voter's village and when events are scheduled. The identity of all bilingual workers, listed by village, shall be on a document that can be referenced by Division staff for any calls that they receive, and this information will be made available to any voter upon request.

2.      The outreach worker instructions will inform outreach workers of their language assistance responsibilities and the Certificate of Outreach form will allow outreach workers to report the number of hours spent assisting voters in pre-election outreach efforts and the number of voters the outreach work assisted. Additionally:

(a)      Certificates of Outreach will allow for confirmation that the outreach worker has made himself or herself available to translate the OEP, is familiar with the translated OEP, and has made themselves available at least one informational meeting with voters in their village or met with voters on a one-on-one basis;

(b)      The Division will provide outreach workers with a list of dates by which each of their assigned tasks should be completed;

(c)      Each outreach worker will complete and return the Certificate of Outreach; and

(d)      If the outreach worker fails to complete the Certificate of Outreach, the Division may confirm by telephone the tasks that the outreach worker has completed and the dates of completion, preparing their confirmation in a signed and dated writing.

3.      The Division will prepare a cover letter to the tribal councils in the

10

Three Census Areas that directly encourages each council to inform tribal members that it has election materials available for them to review. The Division will also:

(a)       Disseminate all written voting materials identified in the Order; and

(b)       Explain how the voting materials are to be used and disseminated by the tribal council.

4.       At least thirty days before each election, with updated dates for each election and in the applicable dialect as identified in Paragraph III(B), the Division will:

(a)       Distribute the public service announcements for local radio stations in the DCA and KCA to notify voters (1) outreach workers may be available to provide language assistance before the election and (2) that bilingual poll workers will be available to assist voters on Election Day. This public service announcement shall also instruct voters that they can call the Yup'ik assistance hotline for general language assistance.

(b)       Distribute a written version of a public service announcement that contains the same information described in paragraph (a) above, for outreach workers or bilingual poll workers to broadcast over VHF in their communities.

(c)       Distribute the following translated pre-election announcements to be read by outreach workers or bilingual poll workers over the VHF radio that include the following information:

(i)       Absentee ballot application deadlines and the availability of the outreach worker to assist in the completion of absentee ballot applications;

11

(ii)     Early and absentee-in-person voting information including the dates, times, and locations;

(iii)    The date, time, and location for the election, and other requirements for voting including voter identification;

(iv)    The subject matter to be included on the election ballot (e.g., what offices are to be filled, bond measures, identification of the subject of each ballot question);

(v)     The availability of language assistance before Election Day and on Election Day, including the name of the person(s) and dates and locations when it will be provided; and

(vi)    The dates, times, and locations for any community meetings to discuss the election information and the name of the person(s) to contact if voters have any questions about the meetings.

(d)     Include in the outreach worker packets in the DCA and KCA *five copies* of a pre-election poster advertising the availability of pre-election language assistance, with instructions that they post them in public locations such as the school, tribal council office, community store, etc. The posters shall state the following:

(i)     You can receive help voting or with any voting-related activity in your Native language;

(ii)    The person(s) available to help you is [blank for the name(s) and telephone number(s) to be filled in by the outreach worker];

12

(iii)    Help will be provided in your Native language before the election on [blank for the time and date to be filled in by the outreach worker] at [blank for the location to be filled in by the outreach worker];

(iv)    Help will be provided in your Native language during early and absentee-in-person voting, Contact [blank for the name(s) and telephone number(s) to be filled in by the outreach worker] for more information; and

(v)    Help will be provided to you at the polling place in your Native language during the election, and will be held at [blank for the location to be filled in by the outreach worker] from 7:00 a.m. to 8:00 p.m.

5.    When the Division sends Election Day supplies to poll workers approximately three weeks before each election, it will include:

(a)    Buttons for poll workers saying "Can I help?" translated into Yup'ik and Election Day posters translated into Yup'ik announcing the availability of language assistance.

(b)    Election Day posters that state the following, in English and Yup'ik:

(i)    You can receive help voting or with any voting-related activity in your Native language;

(ii)    The person(s) available to help you are [blank for the names to be filled in by the outreach worker]; and

13

(iii)    You also have the right to receive help voting from any person of your choice including an election official.

(c)    For each poll worker, at least *two copies* of the Election Day poster described above, with instructions that the poll workers are to post them in conspicuous places inside the polling place where they can be seen by voters before they vote.

6.    At least three weeks before the election, the Division will post on its website the written Central Yup'ik translations of election materials that the Division already routinely posts as individual audio files on the website, as well as written Yup'ik translations of those same election materials that are (1) in a Yup'ik dialect that is understandable in the DCA; and (2) in a Yup'ik dialect that is understandable in the KCA. The Division will also include the Yup'ik audio and materials that have been prepared by the Division.

7.    Before each primary, general, or special election for which the Division disseminates an OEP, the Division will:

(a)    Send to each of the outreach workers in the DCA and KCA (in addition to the audio translations of ballot measure neutral summaries, pro/con statements, and candidate statements) written translations of the following so as to assist the outreach workers in providing oral translations to LEP voters:

(i)    Sample ballots including ballot questions;

(ii)    Neutral summaries of each ballot question prepared by the State;

14

(iii)    Statements of cost associated with ballot questions;

(iv)    Summary of bond measures;

(v)    Pro and con statements for ballot questions and bond measures;

(vi)    Candidate statements (federal and state offices and judicial candidates);

(vii)    A copy of the Official Election Pamphlet; and

(viii)    A cover letter and updated instruction packet to the outreach workers that emphasizes to each outreach worker that she/he is expected to be available to assist voters to understand all voting information and that encourages workers to call the Division with any questions about performing these tasks.

(b)    Translate the entire OEP into written Yup'ik (with the dialectical differences identified in Paragraph III(B)(1) noted) and distributed at least twenty-two days before any election for which the Division disseminates an OEP, except that candidate statements (federal and state offices and judicial candidates) and Judicial Council recommendations will be translated only if they are received by the Division at least thirty days before the applicable statutory deadline. The Division shall include an instruction to candidates and to the Judicial Council that: (1) encourages candidate statements and Judicial Council recommendations be provided to the Division according to this schedule for candidates running for offices that are on the ballot in the DCA and KCA; and (2) states that the statements or recommendations must be filed with the Division at least thirty days before

15

the applicable statutory deadline if they wish to have their statement or recommendation translated.

8.    The Division will make every effort to provide at least one trained bilingual poll worker for each village and to hire and train individuals interested in serving as bilingual outreach workers. The Division will continue to disseminate information regarding the bilingual outreach program.

(a)    Defendants shall verify the language abilities of each bilingual outreach worker or poll worker to confirm they are fluent and literate in English and the covered dialect, both oral and written;

(b)    The Division will contact and attempt to recruit all potential bilingual workers identified by the Plaintiffs and tribal councils.

(c)    Defendants will endeavor to use workers recommended by the tribal council. If no worker is identified by the tribal council, then Defendants will identify and recruit a worker who is bilingual and literate in English and the covered dialect, both oral and written;

(d)    To the extent it has not already determined the language abilities of a bilingual worker, the Division will confirm the worker's language abilities by: (1) having a qualified person who speaks the dialect converse with the worker in the dialect; and (2) ask the worker to read out loud voting materials translated into the dialect;

(e)    Each worker shall agree in writing their willingness to serve as a bilingual worker and indicate that they feel comfortable providing the translations and

16

language assistance. If the worker fails to agree in writing, the Division may confirm by telephone the worker has agreed to serve as a bilingual worker, preparing their confirmation in a signed and dated writing;

(f) The tribal councils may recommend to the Division that a bilingual poll worker be replaced;

(g) The Division and the tribal council shall collaborate in determining whether the person recommended by the tribal council will be used as a bilingual worker; and

(h) Subparagraph (a) above does not absolve the Division of any obligations it has under Section 203 of the VRA.

**B.    Dialects**

Yup'ik in the DCA and KCA. The Yup'ik Translation Panel (YTP) shall accommodate the following dialects of Yup'ik in its translation of all voting materials and election information in the DCA and KCA: Bristol Bay Yup'ik (BB); Central Yup'ik (GCY); Hooper Bay/Chevak Yup'ik (HBC); Norton Sound Yup'ik (NS); Yukon Yup'ik (Y); Nunivak Cupig.

**C.    Glossaries of Election Terms**

The Yup'ik glossary shall be updated to include common election terms that appear on forms and instructions or on ballots that do not presently appear in the glossary. The YTP shall review updates to the glossary and identify any additional words to be added to the glossary. The Division shall complete additional updates to follow as the YTP

17

determines appropriate.

**D.     Toll-Free Number for Language Assistance**

1.     Defendants' voting materials shall reflect that language assistance is available in the covered dialects as identified in Paragraph III(B)(1).

2.     Defendants will have available at least one Yup'ik bilingual translator to provide language assistance by phone, and provide referrals for assistance in specific dialects spoken in the DCA and KCA as necessary.

3.     Defendants shall promptly arrange a call between the voter and an appropriate translator, depending upon the dialect of the voter who is calling.

4.     The Division shall document the translator's name, their dialect, date, and duration of the call with the voter calling the toll-free number.

**E.     Translation Panels**

1.     The YTP shall have at least eight members that shall represent a knowledge, collectively, of all Yup'ik dialects identified in Paragraph III(B)(1).

2.     The Division will pay each member of the Translation Panel(s) at least $50 an hour.

**F.     Procedures for Translations**

1.     All translations identified above shall:

(a)     Include adjustments for any differences in the dialects identified in Paragraph III(B)(1). If minor, they can be done through footnotes. If more numerous or substantial adjustments are necessary for a particular dialect, they can be done

18

through a separate document for that dialect which identifies the dialect. The YTP shall determine whether the dialectical differences are sufficient to warrant using a separate document instead of footnotes; and

          (b)     Be in writing, to facilitate complete, accurate, and uniform oral translations.

        2.     Translations of the official ballot, sample ballot, and glossary shall be completed by a quorum (majority) of the members of each of the translation panel(s) described in Paragraph III(E) of this Order. For example, if the YTP has eight members, at least five members may be used to complete the translations as long as those members can identify and adjust for the dialectical differences identified in Paragraph III(B)(1).

        3.     Translations of the pro/con statements, neutral summaries, and summary of statement of costs may be completed by one translator and shall be verified by at least one additional translator, as long as the Yup'ik translators can identify and adjust for the dialectical differences identified in Paragraph III(B)(1).

        4.     Translations of other voting materials and election information shall be completed by translation panel members to the maximum extent feasible, provided that all Yup'ik translations are adjusted for the dialectical differences identified in Paragraph III(B)(1). Whenever feasible, each translation shall be verified by at least one other translator.

        5.     The Division shall make all reasonable efforts to recruit bilingual recorders to provide audio of the translations identified above and an audio translation of the glossaries. The Division will pay a bilingual recorder at least $50 an hour, will have the

bilingual recorder sign an agreement of their willingness to work, and will give the bilingual recorder a deadline for each recording. If a bilingual recorder misses the first deadline by more than five days, the Division will endeavor to replace the bilingual recorder and will have the replacement bilingual recorder sign an agreement of their willingness to work.

G.    **Bilingual Outreach Workers and Poll Workers, and Language Assistance Compliance Manager**

1.    The Division shall retain a full-time employee responsible for administrating and coordinating all activities necessary for the Division to comply with Section 203 of the VRA ("Language Assistance Compliance Manager").

2.    The Division shall provide Yup'ik language assistance in all villages in the DCA and KCA.

3.    The Division shall require outreach workers to provide outreach sufficient to complete, before each election, the Mandatory Pre-Election Outreach detailed below, Paragraph I. Thirty hours for each election is the maximum number of hours authorized to be paid to an outreach worker unless the outreach worker first obtains the Division's approval.

4.    In the Division's initial communication with the tribal councils about upcoming election information, the Division shall include a statement that the tribal council may recommend a bilingual outreach worker or poll worker, and may request at any time that a bilingual outreach worker or poll worker be replaced.

5.    The Division will consult with the tribal councils in the DCA and KCA and ask that the tribal councils provide the Division with a list of names and contact

20

information of persons who have been identified by the tribal councils as being bilingual and literate in English and the covered dialect.

6.       The Division shall secure the written agreement of replacement bilingual workers. If the replacement bilingual worker fails to agree in writing, the Division may confirm by telephone the worker has agreed to serve as a bilingual worker, preparing their confirmation in a signed and dated writing.

7.       If the Division learns that a person scheduled to work as a bilingual outreach worker has not performed or cannot perform their assigned tasks, where feasible the Division shall recruit and train a replacement bilingual outreach worker.

**H.       Mandatory Training**

1.       The Division will make all poll workers aware of language assistance requirements in its regular training sessions.

2.       <u>Mandatory in-person training</u>. All bilingual election workers are required to receive the training identified in this Order. If a bilingual outreach worker or bilingual poll worker fails to attend in-person training, wherever feasible the Division must reschedule training for that worker or replace that worker who will be scheduled to attend the next in-person training.

3.       <u>Frequency</u>. In-person training shall be done every even-numbered year and for elections in odd-numbered years in which a special ballot measure appears, at the time identified in this Order. During odd-numbered years in which there is no special ballot measure, telephonic training shall be conducted. If in-person training is not possible, the

21

Division will conduct synchronous virtual training by video or phone, which will constitute in-person training for the purposes of this Order. The Division will provide all training materials to attendees in hard copy. Whenever possible, the Division will provide training materials to attendees ahead of any distance training.

        4.    <u>Duration of Bilingual Outreach Worker and Bilingual Poll Worker Training</u>. Training for bilingual election workers must be for a reasonable amount of time sufficient to cover the topics in paragraph 5 below. The Division shall make travel arrangements for those election workers who must travel to the training location that are sufficient to ensure that all bilingual election workers attend all of the mandatory in-person training. The Division shall pay for all associated costs of travel, lodging, and per diem.

        5.    <u>Content of language training</u>. Language assistance training shall be in addition to any training provided for election procedures and Alaska elections law; the training will focus exclusively on language assistance and practicing available translations. The Division will provide a Yup'ik speaker during each training session. The Division may schedule this language training to be on a day consecutive to its more general training provided to all poll workers. The language training shall adequately cover the following topics:

        (a)    Summary of language assistance required under the VRA;

        (b)    Procedures for identifying and assisting voters who may need language assistance;

        (c)    Advising all voters of the availability of translation assistance;

        (d)    Instructions for providing assistance on voter registration;

(e) Instructions for providing assistance in completion of absentee ballot applications or their equivalent (e.g., vote by fax, etc.);

(f) Special instructions for workers covering Permanent Absentee Voting (PAV) locations;

(g) Instructions on early and absentee-in-person voting procedures and schedule;

(h) Instructions for casting a ballot on a voting machine, including how to use the audio translation feature;

(i) Instructions on assisting voters who need to cast a challenged ballot;

(j) Translations on the content of the OEP available at the time of training, which shall be provided to workers in writing in the applicable dialect as identified in Paragraph III(B);

(k) How to use written translations to provide complete, accurate, and uniform translations in the covered dialect;

(l) Instructions on how to translate procedural voting materials (forms and instructions);

(m) Instructions on conducting informational meetings before the election to discuss the ballot and registration and voting procedures;

(n) Practice performing available translations;

(o) Translation of the entire ballot into the dialect;

23

(p)     Practicing the translation of the ballot with each translator;

(q)     Hands-on training with the touch-screen voting machines that emphasizes the importance of setting up and offering the touch-screen voting machine on election day; and

(r)     Poll workers may assist voters by referring to and reading in Yup'ik from the translated OEP.

(s)     A checklist summarizing all of the workers' assigned duties under the Order and the expected dates of completion for pre-election and post-election activities.

6.     <u>Training materials</u>. Training materials provided to bilingual outreach workers and poll workers shall facilitate training on all of the topics listed above. Bilingual workers shall be provided with copies of all written translations available at the time of the training to use for practice during the training, a training handbook, a checklist of their assigned duties and expected completion dates, Election Day materials, and any other materials covering the training topics. Written translations not available at the time of this training shall be provided by mail to the bilingual worker when they become available.

7.     <u>Supplemental training for bilingual poll workers for the General Election</u>. After all remaining materials for the General Election become available, but before the General Election, the Division will provide these materials to the bilingual poll workers and conduct synchronous virtual training sessions in the DCA and KCA. The training shall cover any voting materials, ballot, ballot measures, pro/con statements, neutral summaries,

24

bond questions, statements of costs, candidate statements, etc. not available during the earlier training session. Emphasis will be placed on practicing translations of ballot measures, ballots, and other information not provided in the initial training.

8. <u>Phone or Asynchronous video training only to be provided in emergencies</u>. Phone or asynchronous video training shall only be provided in exceptional cases, including if travel is not possible for any of the mandatory in-person training sessions due to inclement weather or if a bilingual outreach worker or bilingual poll worker is unable to perform their duties and there is insufficient time to provide in-person training to a replacement worker. Phone or asynchronous video training must be done at least one (1) day before the election and can be by conference call. The training must cover the topics from the regular training.

9. <u>Documentation of training</u>. Defendants shall maintain records of the following through the term of this Order:

(a) The training agenda, to include all of the topics listed above;

(b) Training materials disseminated to bilingual workers;

(c) Audiovisual and other materials used during the presentation;

(d) Written role-playing scenarios covered during the training;

(e) Attendance list with the bilingual worker's printed name and village and their signature and sign-in and sign-out times. If one or more bilingual workers did not attend the complete training, then the Division must identify that act; and

(f) Documentation of travel provided for training, to include

25

Division employees and workers who attended.

          10.    <u>Notice of Training.</u> Defendants shall endeavor to provide notice of all trainings to bilingual election workers, to include the call-in information for distance training, at least fifteen days prior to training. If fifteen days' notice is not possible, notice shall be given as soon as practicable.

**I.    Mandatory Pre-election Outreach**

          1.    <u>Mandatory informational meetings.</u> Pre-election outreach must include informational meetings. Performance of this requirement by outreach workers may be through one or more community-wide informational meeting(s), small group meeting(s), or one-on-one meetings. The informational meetings shall be to register voters and to cover the following election topics before the election:

          (a)    Announce all upcoming election deadlines (including registration, absentee ballots, etc.);

          (b)    Announce all upcoming election dates and a summary of what will appear on the ballot to include:

          (i)    Federal, state, or local offices;

          (ii)    Ballot questions: and

          (iii)    Bond questions;

          (c)    Provide an opportunity to register to vote and provide language assistance for filling out registration forms;

          (d)    Explain the absentee ballot application and voting process when

26

the applications or ballots are being disseminated or accepted by the State;

(e)  Explain the early and absentee-in-person voting process including dates and locations;

(f)  Explain voter identification requirements to include the acceptable forms of identification;

(g)  Review in the covered dialect all of the information in the OEP;

(h)  Review in the covered dialect the sample ballot;

(i)  Describe the availability of language assistance before Election Day and on Election Day, including the name of the person(s) and dates and locations where it will be provided;

(j)  For other informational meetings, if any, identify the dates, times, and locations for other meetings to discuss the election information and the name of the person(s) to contact if the voters have any questions about the meetings;

(k)  Provide the name and toll-free number of the person available for assistance in Yup'ik, and for referral for dialect assistance as necessary; and

(l)  Have a question and answer session in the dialect regarding the election or voting process.

2.  <u>Mandatory follow-up</u>. At least twenty-five days before an election, the Division shall follow up with the outreach workers to confirm that they have received the outreach materials and that they agree that they will perform the outreach in a timely manner.

27

**J.  Pre-election and Election Day Publicity**

1.  The Division shall provide publicity that includes all of the announcements described in the Interim Order [Dkt. 226].

2.  In addition to the publicity specified in the Interim Order [Dkt. 226], the following terms will be implemented:

(a)  Radio broadcasts. The Division shall request that the following radio stations broadcast PSAs, using the dialect identified in parentheses:

(i)  KDLG – Dillingham (Bristol Bay Yup'ik);

(ii)  KYUK – Bethel (Central Yup'ik);

(iii)  KICY – Nome (Yukon Yup'ik); and

(iv)  KCUK – Chevak (Hooper Bay/Chevak).

(b)  Frequency. The Division shall request that beginning at least five days before each election and each deadline (e.g., absentee voting, voter registration, list maintenance), the radio station make at least three announcements a day on weekdays for three days in the dialect identified above in Paragraph III(J)(2)(a).

(c)  Content (in the dialect identified above in Paragraph III(J)(2)(a)). The following topics shall be included in the PSAs:

(i)  Date and time of the next election;

(ii)  Opportunities to register to vote and the deadline for registering before the next election;

(iii)  Availability of absentee voting and the deadline for

28

submitting an application;

        (iv)    Early and absentee-in-person voting dates and the Division's telephone number to find these voting locations;

        (v)    General description of the subject matter of the ballot including if there are federal/state/local offices, bond questions, ballot propositions, etc.;

        (vi)    Availability of language assistance before Election Day and on Election Day; and

        (vii)    Toll-free number for language assistance or to find out the name of any bilingual outreach worker in the voter's village.

        (d)    <u>List maintenance announcements</u>. The following topics shall be included:

        (i)    A summary of what list maintenance is and why it is important;

        (ii)    Steps to take to ensure the voter remains on the active voter list; and

        (iii)    Toll-free number for language assistance for any questions.

        (e)    <u>Documentation</u>. The Division shall keep documentation of its correspondence with the radio stations, including if it is provided information by the radio station that identifies the dates, times, and content of the ads aired.

    **K.**    **Language Assistance for List Maintenance.**

1.     Within two weeks of when the Division sends list maintenance inactivation notices to voters it shall provide to tribal councils a written translation in the applicable dialect identified in Paragraph III(B) of the list maintenance radio ad.

2.     The Division will provide list maintenance notices in Yup'ik.

**L.     Touch-screen Voting Machines**

1.     Touch-screen voting machines shall be available at all polling places on Election Day when there are federal races on the ballot. If more than one dialect for a village is identified pursuant to the procedure in Paragraph III(B), then the audio translation on the touch-screen voting machine shall be provided in one dialect identified by the YTP in consultation with the appropriate tribal council. Audio translations shall be included in the applicable dialect identified pursuant to Paragraph III(B) for all audio information and instructions provided on the machine in English. All poll workers shall practice using the audio language assistance available on the machines.

2.     If placing audio translations on the touch-screen voting machines is not technologically feasible, the Division will provide the voter with access to the audio translation in another format and will make available to the voter the translated sample ballot.

**M.     Sample Ballots, OEP, and Their Use**

1.     The Division shall continue to post on its webpage and to provide written bilingual sample ballots to tribal councils, outreach workers, and poll workers. The tribal councils or outreach workers may provide copies of the written bilingual sample ballots to voters before the election. Voters are free to bring in their marked-up sample ballot and

30

translated OEP to assist them in casting a ballot on Election Day. Poll workers may assist voters by referring to and reading in Yup'ik from the translated OEP.

2.    Written bilingual sample ballots shall be available to voters at the Division's five Regional Offices.

**N.    Voter Registration**

1.    The Division shall ensure that each tribal council has an adequate supply of voter registration forms and instructions.

2.    The Division shall provide to each village signs in the applicable dialect identified in Paragraph III(B) identifying the availability of voter registration forms, language assistance to register, and the name and phone number of the bilingual registrar, if any. If there is no bilingual registrar, the sign shall provide the Division's toll- free number for language assistance.

**O.    Permanent Absentee Voting (PAV)**

1.    PAV sites in the DCA and KCA must have resident bilingual workers who are required to be available during the entire time that absentee voting is occurring, with a notice posted in public places in the applicable dialect identified in Paragraph III(B) advertising the name, phone number, location of the bilingual worker and that language assistance is available. The bilingual worker must be trained in-person and be fully bilingual and literate in English and the dialect spoken in the village.

2.    No village in the DCA and KCA that is not currently a PAV site shall be designated as a PAV site without providing the Plaintiffs with at least sixty days' notice

31

of Defendants' intention to designate the village as a PAV site.

**P.     Voters Provided Questioned Ballots**

The Division shall provide instructions to all voters who vote a questioned ballot on the questioned ballot process in the applicable dialect identified in Paragraph III(B). Information and notices about the questioned ballot process may be provided by the bilingual poll worker orally, to include information on how the voter determines whether their vote was counted via a toll-free number. Language assistance as described in Paragraph III(D) shall be provided to voters calling the toll-free number.

**Q.     Record-Keeping**

Defendants must maintain all records pertaining to their language assistance program, consistent with 28 C.F.R. § 55.21. Complete records must be maintained for the term of this Third Stipulated Order to identify the Division's efforts under it.

**R.     Targeted Assistance**

If there is information suggesting that there are no LEP Yup'ik speaking voters in a particular village, the Division will provide that information to the Plaintiffs. After the Plaintiffs have an opportunity to examine the information, review Census data, and confer with the village in question, within 120 days they will inform the Division whether they agree that Yup'ik-language assistance is not needed in that village and provide supporting information.

**S.     Reporting Requirements**

1.     Thirty days before each election, the Division shall inform Plaintiffs if

32

they do not believe they will be in compliance with any requirement under this Order.

2.       Defendants will submit reports and records to the Court. The report will assess the Division's compliance with each requirement of this Order and will include supporting records as required by A(2), A(8)(d), D(4), G(6), H(9) and J(2)(e). The report will also include documentation of the Division's efforts to secure bilingual outreach and poll workers in any villages where it is unsuccessful. Additional records kept pursuant to this Order will be provided to the Court or Plaintiffs upon request. The reports shall be provided on the following schedule:

(a)       in odd-numbered years, 60 days after the REAA Election; and

(b)       in even-numbered years, 60 days after the General Election for the Primary, REAA, and the General Elections.

3.       Plaintiffs will have an opportunity to file a response within 60 days after Defendants file their report.

## IV.      LANGUAGE ASSISTANCE IN GWICH'IN

The parties acknowledge that Gwich'in is no longer a covered language in the YKCA. Nevertheless, the Division will preserve the existing translated materials and to the extent practicable make them available on the Division's website and upon request. The Division will continue to re-hire existing Gwich'in bilingual poll workers to the extent they are willing to serve.

## V.      PERIODIC MEETINGS

The parties will meet regularly, at least twice a year, at dates and times that are

33

convenient for the parties. The meetings can include topics that are covered under the terms of this Order.

## VI. ENFORCEMENT

A.      The Court may enforce the terms of this Order through contempt proceedings. *See United States v. Sandoval County*, 797 F. Supp. 2d 1249, 1254 (D.N.M. 2011).

B.      If Defendants or the Division do not have the intent or means to comply with the terms of this Order, Plaintiffs shall have the right to seek such relief as may be necessary to enforce the terms of this Order. Before seeking such relief from the Court, Plaintiffs shall notify Defendants, in writing, of Plaintiffs' understanding or belief that Defendants lack the intent or means to comply with this Order. Such notice shall specify any grounds for such understanding or belief.

C.      If the Defendants are otherwise in compliance with the terms of this Order, a *de minimis* violation will not alter that substantial compliance. Factors that are relevant to whether non-compliance with a provision in the Order is *de minimis* include:

1.      Previous non-compliance for the polling location and/or village;

2.      The nature of the non-compliance: whether the non-compliance was minor (such as failing to have a translator available for a portion of the day that the polls were open or having a translator who failed to attend training) or more substantial (such as not having a translator available for the entire day);

3.      The circumstances of the noncompliance: whether the non-compliance was the result of unforeseeable circumstances (such as a translator not showing up because

34

of a death in the family or poll workers unable to attend in-person training because of inclement weather);

4. Efforts undertaken by Defendants in advance to plan for possible contingencies, such as the one resulting in non-compliance;

5. If pre-election outreach was not provided or was limited (such as not including information in the OEP), efforts undertaken by Defendants to provide that in-person outreach through other means, including on Election Day; and

6. Translations or assistance the Defendants provided through alternative means (such as through other bilingual speakers or through written translations provided to voters who could read and understand them).

## VII. AMENDMENTS TO THE ORDER

A. **Modification.** The Court may, either on request of a party or acting *sua sponte*, modify one or more of the provisions of this Order if the Court finds that such modification is necessary to achieve the purposes of the Order or in the interests of justice.

1. *Sua Sponte*. Before modifying a term *sua sponte*, the Court will give the Parties notice and an opportunity to be heard on the issue. The Court will make specific findings on the record to support any decision to modify a term.

2. <u>Upon request of a Party</u>. Pursuant to the "flexible approach" to be applied to motions to modify a final judgment pursuant to Federal Rule of Civil Procedure 60(b)(5), the Court will consider two factors in determining whether a requested modification is warranted. First, the party seeking modification must establish "a significant change either

35

in factual conditions or in law" that would "make compliance with the decree substantially more onerous" or "unworkable because of unforeseen obstacles" or that "enforcement of the decree without modification would be detrimental to the public interest." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992). Second, the Court will "consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383. The party seeking such a modification must establish a "significant" change in circumstance, and not merely that "it is no longer convenient" to use the existing term for which modification is sought. *Id.* Any proposed modification is limited to resolution of "the problems created by the change in circumstances. A court should do no more, for a[n order such as this Order] is a final judgment that may be reopened only to the extent that equity requires." *Id.* at 391.

B.     **Extension of the term of the Order.** This Order shall terminate on December 31, 2026.

C.     **Standard for modification and extension.** This Order may be modified or extended if the moving party can meet the requirements under applicable law for securing that relief. The parties agree that the Division's compliance with this Order will be measured by the standards set out in 28 C.F.R. § 55.2.

## VIII.  ATTORNEYS' FEES AND COSTS UNDER THE ORDER

A.     The parties are each responsible for their own costs and fees incurred after the Court's issuance of the Stipulated Judgment and Order.

## <u>CONCLUSION</u>

IT IS ORDERED that the parties' Joint Motion at Docket 354 is GRANTED.

36

The Court finds that the parties' proposed Third Stipulated Order is fair, reasonable and equitable and does not violate public policy. *See Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1165 (9th Cir. 2012) (quoting *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990)). Therefore, this Third Stipulated Order is entered on this date.

DATED this 31st day of August 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

37

38